JEROME J. SONNENBORN AND ETHEL G. SONNENBORN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 877–69.   Filed December 13, 1971.

*O. John Rogge* and *Ira Paul Klein*, for the petitioners.
*Agatha L. Vorsanger*, for the respondent.

The Commissioner determined deficiencies in petitioners' income tax in the years and amounts as follows:

| Year | Deficiency |
| --- | --- |
| 1965 | $27,446.68 |
| 1966 | 39,383.34 |
| 1967 | 13,371.25 |

Petitioner Jerome J. Sonnenborn has conceded that he is liable for the deficiencies as determined by the Commissioner. Petitioner Ethel G.

Sonnenborn similarly does not contest the correctness of the deficiencies but presents merely the isssue as to whether she is relieved of liability in respect thereof by section 6013(e), I.R.C. 1954.

## FINDINGS OF FACT

Jerome J. and Ethel G. Sonnenborn are husband and wife. They filed joint Federal income tax returns for the calendar years 1965, 1966, and 1967 with the district director of internal revenue at Manhattan, New York, and resided in New York at the time the petition in this case was filed.

Ethel G. Sonnenborn (petitioner) attended New York University. She later did graduate work at the College of Podiatry of New York University, and in 1944 received a doctorate degree in podiatry. She and Jerome J. Sonnenborn were married in 1939; they have remained married and have continuously lived together until the date of the trial herein. Although petitioner did some volunteer "clinic" work in podiatry in the early years following her education, she does not appear to have been gainfully engaged in her profession until 1970 when she "purchased" a private practice in order to supplement family income which had meanwhile declined as a result of financial reverses.

From 1961 until the present time the Sonnenborns have lived in a large apartment in a fashionable area in New York City. The rent for this apartment was originally $1,000 a month; during the tax years, 1965-67, the rent was at least $1,200 a month; and the rent now is about $1,400 a month. The Sonnenborns have three sons, Monroe, Donald, and Gene, who in 1965 were 23, 21, and 12 years old, respectively.

During 1965, 1966, and 1967, the years in issue, petitioner and her husband each owned 50 percent of the stock of Monodon Corp. ("Monodon" or the "corporation"). Its principal business was the sale and export of paper.

Mr. Sonnenborn was president and petitioner was treasurer of the corporation. In its fiscal years ended January 31, 1966, 1967, and 1968, Monodon paid salaries of $26,100, $26,180, and $42,460, respectively, to Mr. Sonnenborn and $3,120, $3,172, and $8,352, respectively, to petitioner. Monodon's income tax returns for each of those years stated that "All" of the time of each of its officers was devoted to business. That representation was not truthful in petitioner's case, although she did devote some time to its affairs. In the years 1965, 1966, and 1967, Mr. Sonnenborn was not only active in the management of Monodon but was also concerned with the operation of another company, Northland Paper Mill (Northland), of Norfolk, N.Y. That company had been acquired some time during or prior to the tax years, and the record indicates that it was under Mr. Sonnenborn's control; its activi-

ties appear to have been related to those of Monodon. The record does not satisfactorily disclose whether it was a subsidiary of Monodon, whether it was wholly owned by the Sonnenborns individually, or whether petitioner had any interest therein. During the tax years, 1965–67, Mr. Sonnenborn traveled to Norfolk often in connection with Northland's affairs. On these and other occasions when he was absent from the corporate offices of Monodon, petitioner, who was authorized to sign checks on the corporation's behalf, went to Monodon's offices and signed such checks presented to her by other corporate officers. She was otherwise only generally acquainted with the operation of the corporation from discussions she had with her husband and other corporate officers.

. For the years 1965, 1966, and 1967, the Sonnenborns reported the following "total income" on their joint returns:

|  | 1965 | 1966 | 1967 |
|---|---|---|---|
| Wages, salaries, * * *_____ | $39,520.00 | $39,520.00 | 3,920.00 |
| Other income_____ | 5,778.88 | 6,339.97 | 6,151.72 |
| Total income_____ | 45,298.88 | 45,859.97 | 60,071.72 |

As to the "Wages, salaries * * *" component, the record does not reveal whether the foregoing figures include compensation from any source or sources other than Monodon; and if that component relates exclusively to compensation from Monodon, the record does not explain the possible discrepancy that may exist between those figures and the following salaries (as found above p. 374) received by petitioner and her husband from Monodon during its fiscal years ending January 31, 1966, 1967, and 1968:

|  | Year ending Jan. 31— | | |
|---|---|---|---|
|  | 1966 | 1967 | 1968 |
| Mr. Sonnenborn_____ | $26,100 | $26,180 | $42,460 |
| Petitioner_____ | 3,120 | 3,172 | 8,352 |
| Total_____ | 29,220 | 29,352 | 50,812 |

As to the "Other income" component, no amount thereof for any of the years includes any income from Monodon, by the way of dividends or otherwise. Such "Other income" was attributable in major part to securities (predominantly stock in American Telephone & Telegraph Co.) owned by petitioner which she had acquired either from her father or prior to the tax years involved herein. The remaining "Other income" related to interest on a small bank account of petitioner's, dividends on securities owned by her husband, and sales or exchanges of property.

The joint returns of petitioner and her husband for the 3 years 1965–67 indicate that the following aggregate amounts of income tax were withheld from their salaries by their employer:

| Year | Total withheld |
|------|----------------|
| 1965 | $5, 067. 20 |
| 1966 | 6, 226. 70 |
| 1967 | 11, 088. 60 |

Every week during the tax years petitioner's husband gave her a $900 check issued by Monodon. She deposited each such check in her personal checking account and returned $100 thereof to her husband for his personal expenses. She used the remaining $800 for household and living expenses. In this manner petitioner received $46,800 in checks from Monodon in each of the years in issue, of which $41,600 was applied by her to household and living expenses. Mr. Sonnenborn did not make any deposits to petitioner's account.

Among the household expenses paid by petitioner during the tax years out of her personal checking account were the following: Apartment rent ($1,200 per month); maid's salary ($50 per week); clothing for family (approximately $3,000 per year); food (approximately $100 per week); tuition and expenses for Monroe at Yale Law School, for Donald at Haverford College and Columbia Law School, and for Gene at the Walden School plus summer camp (in the aggregate of about $9,000 or $10,000 a year). In addition to these living expenses petitioner and her husband made the following payments during the tax years:

| | 1965 | 1966 | 1967 |
|---|------|------|------|
| Charitable contributions | | $200. 00 | $200. 00 |
| Sales taxes | $250. 00 | 270. 00 | 240. 00 |
| State and local income taxes | 3, 301. 52 | 3, 412. 39 | 3, 830. 41 |
| Interest | | 7, 083. 03 | 2, 645. 96 |
| Total | 3, 551. 52 | 10, 965. 42 | 6, 916. 37 |

Also, petitioner and her husband paid Federal income taxes during the years 1965, 1966, and 1967 in the amounts of $12,227.20, $12,229.90, and $14,216.20, respectively, inclusive of the amounts withheld from salary, as found above.

In April 1968, Monodon made an assignment for the benefit of its creditors and went out of business. Thereafter, Mr. Sonnenborn devoted his time to another company, Overseas Pulp & Paper, in which he and petitioner each owned 50 percent of the stock. Some time after 1967 petitioner sold the American Telephone & Telegraph Co.

stock given to her by her father. She invested the proceeds therefrom in the amount of approximately $150,000 in Overseas Pulp & Paper. She received "salary" checks in the amount of about $500 per week from Overseas Pulp & Paper.

The joint returns involved herein were prepared by an accountant from information supplied primarily by petitioner's husband. The information supplied by petitioner was limited to dividends and interest received by her, which are not here in issue. After the returns were prepared, they were sent by the accountant to petitioner, who briefly examined them, signed them, made out a check in the appropriate amount for the tax due, and then mailed the returns together with the check.

For its fiscal years ended January 31, 1966, January 31, 1967, and January 31, 1968, Monodon deducted the following expenses, portions of which have been disallowed and charged as dividend income to the petitioner:

|  | 1/31/66 | 1/31/67 | 1/31/68 |
|---|---|---|---|
| Entertainment | $37,460.69 | $28,503.31 | $25,907.99 |
| Selling and traveling | 30,497.39 | 36,793.42 | 33,304.34 |
| Auto expenses | 5,779.86 | 2,941.68 | 4,190.30 |
| Contributions to Walden School | 1,928.50 | 4,114.20 | 0 |
| Commissions | 4,020.67 | 31,217.00 | 22,041.87 |

In his deficiency notice addressed to petitioner and her husband, the Commissioner determined that Monodon made certain payments to the Sonnenborns or for their benefit and permitted them to use corporate property without compensation which constituted dividend income to both of them, as follows:

|  | 1965 | 1966 | 1967 |
|---|---|---|---|
| Payments charged to loan account | $34,038.59 | $52,510.38 | $7,710.02 |
| Entertaining | 11,556.06 | 8,309.94 | 7,700.40 |
| Selling and travel | 1,354.04 | 7,171.74 | 3,202.16 |
| Auto expense | 1,846.26 | 1,837.12 | 1,335.40 |
| Contributions | 1,868.50 | 2,450.20 | |
| Commissions | | | 4,850.00 |
| Total | 50,663.45 | 72,279.38 | 24,797.98 |

The record does not contain any explanation in respect of the "Payments charged to the loan account" item in 1965, 1966, and 1967, which the Commissioner determined to constitute dividends to petitioner and her husband.

## The entertainment expenses consist of the following:

**1965**

| Entertainment | | | | |
|---|---|---|---|---|
| (January) | $498.12 | Helen Garity Green | $1,789.23 |
| David Green | 500.00 | Rumeck & Co | 433.82 |
| American Express | 565.84 | Cash | 780.00 |
| Metropolitan Opera | 577.00 | Saks Fifth Ave | 825.00 |
| Saks Fifth Ave | 665.41 | E. J. Korvette | 167.00 |
| Tiffany's Jewelers | 1,015.64 | Wechsblatt Furs | 3,000.00 |
| H. Schlessner | 358.00 | | |
| Richard Krentz | 375.00 | [1] 11,550.06 | |

**1966**

| Saks Fifth Ave | $750.00 | American Express | $419.89 |
|---|---|---|---|
| Grossingers Hotel | 618.24 | Continental | 456.93 |
| Metropolitan Opera | 577.00 | Continental | 930.00 |
| Tiffany's | 1,839.56 | P. Cohen | 580.26 |
| Saks Fifth Ave | 735.70 | J. Elvarez | 400.00 |
| Robert Hall | 520.00 | | |
| Gifford | 482.36 | 8,309.94 | |

**1967**

| Miller Inc | $299.94 | Sherm Cardiaro | $1,000.00 |
|---|---|---|---|
| Concord Hotel | 711.90 | Sandra Hasson | 300.00 |
| Tiffany's | 68.04 | American Express | 1,342.61 |
| Ripley Inc | 168.00 | Tiffany's | 270.06 |
| Robert Hall | 500.00 | Saks Fifth Ave | 1,350.00 |
| Leonard Radio | 517.75 | | |
| Metropolitan Opera | 697.00 | 7,700.30 | |
| Robert Hall | 475.00 | | |

## The selling and travel expenses consist of the following:

**1965**

| Cash | $350.00 |
|---|---|
| Hotel Americana | 504.04 |
| Carib Hotel, Porto Rico | 500.00 |
| | 1,354.04 |

**1966**

| M. Wohl | $300.00 | Cash | $500.00 |
|---|---|---|---|
| American Express | 1,236.00 | Shine Inn | 585.98 |
| M. Wohl | 500.00 | Do | 324.76 |
| Do | 450.00 | M. Wohl | 800.00 |
| Do | 375.00 | Do | 700.00 |
| Do | 500.00 | | |
| Do | 900.00 | 7,171.74 | |

---

[1] The discrepancy between this stipulated figure and the $11,556.06 amount charged as constructive dividend for 1965 in respect of "Entertaining" is unexplained.

| | | | |
|---|---|---|---|
| M. Wohl | $1,000.00 | American Express | $837.16 |
| Do | 490.00 | | |
| Cash | 375.00 | | 3,202.16 |
| Do | 500.00 | | |

The individual items comprising the entertainment and selling and travel categories listed above were payments made by Monodon to certain individuals, department, jewelry, and fur stores, the Metropolitan Opera, American Express, and certain airlines and hotels. Although the record establishes that Monodon made various expenditures in the nature of gifts to or entertainment for certain of its customers that correlate with certain of the payees above (e.g., Saks Fifth Avenue, Tiffany's Jewelers, American Express), the record fails to correlate most of the specific items listed above with such expenditures. The Metropolitan Opera item represents the purchase of a pair of season tickets which were sometimes used by petitioner together with her husband, which were sometimes offered to customers of Monodon, or which were used on occasion by petitioner together with a customer of Monodon. Some of the other items were unexplained. Petitioner did not personally receive any benefit either directly or indirectly from most of the foregoing payments relating to entertainment or selling and travel expense.

The "Auto expense" item in the determination of deficiency relates to a Cadillac automobile that was owned by Monodon but which was garaged at the apartment house in which the Sonnenborns resided. The automobile was used not only for business purposes, but it was also used from time to time for personal family purposes. The Commissioner's determination disallowed only a portion of the automobile expenses claimed by Monodon and treated that portion as dividend income to petitioner and her husband.

The "contributions" item represents payments to the Walden School, which was attended by the Sonnenborns' youngest son.

The "commissions" item consists of two unexplained checks to cash in the amounts of $2,000 and $2,850.

Mr. Sonnenborn has conceded that he is liable for the full amount of the deficiencies which are the consequence of including these constructive dividends in the income of both spouses. He was in New York City at the time of the trial herein but did not appear or testify in this case.

OPINION

Raum, *Judge:* Petitioners are husband and wife, who filed joint returns for the years 1965, 1966, and 1967. Together they owned, in

equal shares, all of the stock of Monodon corporation. During the taxable years, Monodon made various payments, which the Commissioner treated as dividends or constructive dividends to petitioners. He accordingly determined deficiencies[2] in tax against both petitioners, whose liability is joint and several as a consequence of the filing of joint returns (sec. 6013(d)(3), I.R.C. 1954). The husband has already conceded that he is liable for these deficiencies. Moreover, the wife, now the only remaining litigant contesting the Commissioner's action (and referred to herein for convenience as the petitioner), does not challenge the correctness of the Commissioner's determination. She seeks to be relieved of liability only on the narrow ground that she comes within the so-called innocent spouse provisions of the recently enacted addition to section 6013 of the Internal Revenue Code of 1954,[3] which reads as follows:

SEC. 6013. JOINT RETURNS OF INCOME TAX BY HUSBAND AND WIFE.

(e) SPOUSE RELIEVED OF LIABILITY IN CERTAIN CASES.—

(1) IN GENERAL.—Under regulations prescribed by the Secretary or his delegate, if—

(A) a joint return has been made under this section for a taxable year and on such return there was omitted from gross income an amount properly includable therein which is attributable to one spouse and which is in excess of 25 percent of the amount of gross income stated in the return,

(B) the other spouse establishes that in signing the return he or she did not know of, and had no reason to know of, such omission, and

(C) taking into account whether or not the other spouse significantly benefited directly or indirectly from the items omitted from gross income and taking into account all other facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such omission,

then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent that such liability is attributable to such omission from gross income.

(2) SPECIAL RULES.—For purposes of paragraph (1)—

(A) the determination of the spouse to whom items of gross income (other than gross income from property) are attributable shall be made without regard to community property laws, and

(B) the amount omitted from gross income shall be determined in the manner provided by section 6501(e)(1)(A).

It is important that these provisions be kept in proper perspective. The filing of a joint return is a highly valuable privilege to husband and wife since the resulting tax liability is generally substantially

---

[2] The only other adjustment made by the Commissioner, apart from the one noted above, was a relatively minor decrease in the amount of deductible taxes ($33.25) for 1965. This latter adjustment does not now appear to be contested.

[3] Sec. 6013(e) was added to the Code by Pub. L. 91–679, 84 Stat. 2063, which became law on Jan. 12, 1971, and which, by the terms of the enacting legislation (sec. 3), is applicable to all taxable years to which the Internal Revenue Code of 1954 applies.

less than the combined taxes that would be due from both spouses if they had filed separate returns. This circumstance gives particular emphasis to the statutory rule that liability with respect to tax is joint and several, regardless of the source of the income or of the fact that one spouse may be far less informed about the contents of the return than the other, for both spouses ordinarily benefit from the reduction in tax that ensues by reason of the joint return. However, some highly inequitable results were called to the attention of Congress, particularly where a wife had been divorced or separated or abandoned after the tax year, where she was saddled with a disproportionately high tax liability as a consequence of having filed a joint return, where such liability grew out of income attributable only to the husband, unknown to the wife, and where she had not enjoyed any benefit therefrom.[4] It was in an effort to eliminate the unfairness of the joint and several liability provisions in such circumstances that section 6013(e) was enacted. To be sure, section 6013 (e) is not limited to precisely such narrow situations. But it must be kept in mind that Congress still regards joint and several liability as an important adjunct to the privilege of filing joint returns, and that if there is to be any relaxation of that rule the taxpayer must comply with the carefully detailed conditions set forth in section 6013(e). We hold that petitioner has not brought herself within those provisions here.

The Government argues that there has been a failure to meet all three conditions of paragraph (e)(1). Without pausing to consider whether its position is correct in respect of (e)(1)(A) to the effect that petitioner has failed to establish that the income omitted from the joint return was "attributable" to her husband, we are satisfied that petitioner did not carry her burden of proof in respect of both (e)(1)(B) and (e)(1)(C).

1. *Condition (B)*.—Section 6013(e)(1)(B) requires that the spouse seeking relief must establish that "in signing the return he or she did not know of, and had no reason to know of" the omission from gross income on the joint return. In this case the record affirmatively establishes that petitioner herself received weekly checks of $900 each issued by Monodon during each of the 3 years in issue, or an aggregate of $46,800 each year. In addition, the returns that she signed disclosed withholdings from salary on behalf of herself and her husband in the amounts of $5,067.20, $6,226.70, and $11,088.60 for the years 1965, 1966, and 1967, respectively. Adding these amounts to the Monodon

---

[4] A typical case was *Louise M. Scudder,* 48 T.C. 36, which was explicitly referred to by the House Ways and Means Committee (H. Rept. No. 91–1734, 91st Cong., 2d Sess., p. 2), as well as by the Senate Finance Committee (S. Rept. No. 91–1537, 91st Cong., 2d Sess., p. 2).

checks received by petitioner, she either knew or had reason to know that the reportable amounts of income from Monodon were at the very least $51,867.20 for 1965, $53,026.70 for 1966, and $57,888.60 for 1967. Each of these figures is substantially greater than the income appearing on the returns which could have had their source in Monodon, namely, salaries of $39,520, $39,520, and $53,920 for the years 1965, 1966, and 1967, respectively. It thus appears affirmatively on this record that petitioner knew or should reasonably have known that her joint returns underreported income from Monodon in at least the differences between the last two sets of figures.

Moreover, the largest single component of unreported income from Monodon charged to petitioners by the Commissioner was an item designated "Payments charged to loan account." These payments aggregated $34,038.59, $52,510.38, and $7,710.02 for the years 1965, 1966, and 1967, respectively. By their present failure to challenge the classification of these payments as income petitioners must be taken to have conceded the correctness of the Commissioner's determination in this regard. Yet petitioner has offered no evidence whatever to establish that she had no reason to know that such amounts should have been included in the income reported as having been received from Monodon. It must be recalled that petitioner was an officer of Monodon—indeed, its compensated treasurer—and there is no showing whatever in this case that the books and records of Monodon were unavailable to her, or that she had no reason to make inquiry about these payments. The burden of proof was upon her, and that burden cannot be carried by remaining silent. Although her counsel at the trial carefully led her through nearly all the expenditures relating to "entertainment" and "selling and travel"—expenditures of a lower order of magnitude—he put not a single question to her about the so-called payments charged to loan account.[5] We must conclude on this state of the record, taking into account not only the unreported income of which petitioner was shown affirmatively to have been on notice but also the glaring failure of proof in respect of the payments charged to loan account, that there has been a failure to satisfy condition (B) of paragraph (e) (1) of section 6013.

2. *Condition* (*C*).—Paragraph (e) (1) (C) requires us to take into account whether petitioner "significantly benefited directly or indirectly" from the unreported income. The burden of proof is upon her

---

[5] Indeed the *only* evidence in respect of this item was petitioner's answer "No, I don't" in response to a question on cross-examination as to whether she knew "specifically for what these sums were used." This hardly establishes that she had no reason to know that such sums were withdrawn from the corporation and that they represented unreported income.

in respect of this condition, and what we have said above about the "Payments charged to loan account" item is equally applicable here.

The record is tantalizingly silent as to the nature of these payments and the use to which they were put. Conceivably, they were used by petitioner's husband in one or more enterprises in which they had a joint or common interest. The funds may have been invested in Northland Paper Mill, the stock ownership of which was not disclosed on this record. We do not know, and these suggestions are mere speculations. The point is, however, that the burden was upon petitioner and it has not been discharged. Her husband could have been called as a witness to offer clarifying evidence, but he did not appear, nor was any explanation offered as to his absence. As we stated in *Samuel Pollack*, 47 T.C. 92, 108, affirmed 392 F. 2d 409 ('C.A. 5) :

The burden of proof was upon petitioners and we cannot assume that the testimony of a critical absentee witness would have been favorable to them. Indeed, the normal inference is that it would have been unfavorable. Cf. *Stoumen* v. *Commissioner*, 208 F. 2d 903, 907 (C.A. 3) ; *Wichita Terminal Elevator Co.*, 6 T.C. 1158, 1165, affirmed 162 F. 2d 513 ('C.A. 10) ; *Interstate Circuit* v. *United States*, 306 U.S. 208, 226.

In the circumstances, we cannot assume that petitioner did not benefit significantly from these payments, and we must hold for this reason as well that petitioner has failed to satisfy the requirements of section 6013(e).

*Decision will be entered for the respondent.*