MILDRED LANKFORD, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
LANKFORD v. COMMISSIONER
Docket No. 7904-77.
United States Tax Court
T.C. Memo 1980-169; 1980 Tax Ct. Memo LEXIS 415; 40 T.C.M. (CCH) 331; T.C.M. (RIA) 80169; May 12, 1980, Filed *415 Petitioner did not establish that in signing the joint income tax return for 1973 she did not know of, and had no reason to know of, the omission of income received by her husband from the sale of stolen metal. Sec. 6013(e), I.R.C. 1954, is therefore not available to relieve petitioner from liability for the tax attributable to such omitted income. William Henry Agee, for the petitioner. Thomas R. Thomas, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: Respondent *416 determined a deficiency in Charles G. Lankford's and Mildred Lankford's 1973 income tax in the amount of $4,954.10 and a section 6653(b), I.R.C. 1954, [1] addition to tax in the amount of $2,477.05. The instant case involves a petition by Mildred Lankford alone for a redetermination of the deficiency and addition to tax. [2] Due to concessions by both parties, including respondent's concession that Mildred Lankford is not liable for the section 6653(b) addition to tax, the only issue for our decision is whether Mildred Lankford qualifies as an "innocent spouse" under the provisions of section 6013(e) so as to be relieved of liability for the deficiency in tax. *417 FINDINGS OF FACT Some of the facts were stipulated and they are so found. The stipulation of facts, supplemental stipulation of facts, and the exhibits attached thereto are incorporated herein by this reference. Mildred Lankford (hereinafter petitioner) resided in Anniston, Ala., at the time of the filing of her petition herein. Petitioner and her former husband, Charles G. Lankford (hereinafter Lankford), filed a joint Federal income tax return for the calendar year 1973 with the Internal Revenue Service, Chamblee, Ga. Petitioner and Lankford were married in December 1972 and divorced in November 1974. During 1973 Lankford was employed by Republic Steel Corp. (hereinafter Republic) in Gasden, Ala., from which employment he received compensation of $15,897. Petitioner was not employed during 1973 and she had no other source of income. The compensation received by Lankford from Republic was reported on the joint return filed by Lankford and petitioner for 1973. The only other income reported was a State income tax refund of $22. Lankford's signature on the return is followed by the date "2-12-74." No date appears after petitioner's signature. The return is stamped *418 as having been prepared by Accounting Systems International, Inc., Gasden, Ala., followed by the date "2-8-74." There is no evidence indicating when the return was received and filed by the Internal Revenue Service. During 1973 Lankford illegally took scrap copper from Republic. He sold the copper to Oxford Scrap Metals Co. (hereinafter Oxford), for which he received $17,743.82, and to Albertville Scrap Materials Co. (hereinafter Albertville), for which he received $333.45. [3] These amounts were not reported on the Lankford's joint income tax return for 1973. [4] The amounts received by Lankford from the sale of the copper were properly includable in income, they were attributable to Lankford, and they were in excess of 25 percent of the amount of gross income stated in the joint return. [5]
*419 Lankford removed the copper from the premises of Republic by placing it in the trunk of his car. He would then usually drive directly to the business premises of the purchaser. Lankford engaged in this activity throughout 1973 and until July 1974, when a security guard at Republic discovered Lankford collecting copper. [6]Republic discharged Lankford on July 29, 1974. When Lankford sold the copper during 1973 he usually received a check, only occasionally receiving cash. Lankford received 48 checks from Oxford during 1973. Lankford did not have a standard procedure for disposing of the checks received, some were cashed and some were deposited in various bank accounts. Of the 48 checks received from Oxford, petitioner's signature appears on 4 checks as an endorser following Lankford's endorsement. [7] Petitioner also took other checks received from Oxford and endorsed by Lankford and deposited them in bank accounts. [8] Petitioner did not question *420 Lankford in any way concerning the checks from Oxford. The proceeds from the copper sales were commingled with petitioner's and Lankford's other funds. Evidence was not introduced concerning how Lankford was paid for his scrap copper sales in 1974 or how he disposed of the amounts received. Prior to July 1974 Lankford never specifically told petitioner that he was taking scrap copper from Republic. It was only after he was caught by the security guard that Lankford revealed to petitioner what he had been doing. On a few occasions prior to that time petitioner accompanied Lankford when he delivered the copper for sale. On those occasions petitioner did not question Lankford concerning what he was doing and Lankford did not volunteer any information. Neither the exact dates nor the exact number of the times petitioner *421 accompanied Lankford can be stated with certainty, although it is reasonable to believe that petitioner did not accompany Lankford until sometime in 1974. Following their marriage in December 1972, Lankford provided the sole support for petitioner and himself. [9] Lankford also took responsibility for making bank deposits, writing checks, and paying bills. To the extent petitioner was involved in any of these activities during her marriage to Lankford, it was usually at Lankford's direction. During their marriage petitioner and Lankford lived in a residence which petitioner had acquired prior to her marriage to Lankford. The mortgage on the residence was payable at $80 per month and it was satisifed in January 1974. We cannot determine, however, how much was paid during 1973. [10] Petitioner and Lankford lived modestly during 1973. The only purchases of note were: (a) A 1971 Buick Riviera automobile, purchased on credit; (b) the installation of a new roof for the home at a cost of *422 approximately $1,500, for which a loan was obtained; and (c) a stereo system costing approximately $300. Lankford had been married prior to his marriage to petitioner, this prior marriage terminating by divorce in August 1972. As a result of that divorce, during 1973 Lankford made monthly child support payments of $215 and monthly first-mortgage payments of $84.07 on the residence occupied by his former wife. [11] In addition, Lankford also made various payments during 1973 to: (a) His former wife's attorney in the divorce proceedings; (b) his attorney in the divorce proceedings; (c) the holder of a second mortgage on the residence occupied by his former spouse; (d) the DeKalb Bank on a loan for an automobile which the former wife retained; and (e) various banks in repayment of loans incurred during 1972 to pay debts of the prior marriage. The exact amount of these various payments cannot be ascertained from the record. Lankford's compensation from Republic, *423 however, was not sufficient to make the above payments and to support petitioner and Lankford. Prior to 1973 petitioner has a checking account in the First National Bank of Anniston, Ala. This account became the joint account of petitioner and Lankford during April-May 1973. During 1973 and 1974 this account had the following balances on the following dates (the closing date for the monthly bank statements): Date
Balance
Dec. 27, 1972
$ 51.26
Jan. 26, 1973
67.11
Feb. 26, 1973
215.34
Mar. 26, 1973
177.31
Apr. 25, 1973
316.64
May 23, 1973
365.64
June 25, 1973
1,921.83
July 25, 1973
419.22
Aug.   , [illegible] 1973
267.54
Sept. 26, 1973
874.28
Oct. 24, 1973
2,051.22
Nov. 25, 1973
4,124.36
Dec. 28, 1973
5,480.73
Jan. 24, 1974
5,923.69
Feb. 26, 1974
7,338.60
Mar. 27, 1974
7,009.49
Apr. 25, 1974
8,272.80
May 23, 1974
10,360.35
No bank statement for June 1974
July 24, 1974
12,279.71
Aug. 23, 1974
12,135.92
Sept. 23, 1974
216.45
*424 Total deposits to this account during 1973 and 1974 equaled $10,071.82 and $12,617.82, respectively. In February 1974 petitioner and Lankford opened a joint checking account in the First City National Bank, Oxford, Ala. During 1974 (the last being on July 24, 1974), total deposits to this account amounted to $9,732.59. Petitioner, however, never made a deposite or wrote a check on this account. Petitioner and Lankford also had a checking account, which account Lankford apparently opened prior to his marriage to petitioner, with the DeKalb Bank, Crossville, Ala.During 1973 and 1974 total deposits to this account equaled $7,069.03 and $1,730, respectively. An outstanding loan from that bank was also reduced during 1973 and 1974 by the amounts of $2,625 and $2,429, respectively. Petitioner's involvement with this account was, at most, minimal. In August 1974 the amounts of $11,800 and $5,710, respectively, were withdrawn from petitioner's and Lankford's accounts in the First National Bank of Anniston and the First City National Bank of Oxford. These amounts were withdrawn because of a fear that Republic would attempt to recover from Lankford for the scrap copper he took. *425 Republic apparently made no such attempt. On or about October 29, 1974, the above funds, together with a $1,638 check from petitioner's daughter, [12] were used to purchase a $10,000 certificate of deposit from the First National Bank of Anniston. The remaining funds, approximately $9,148, were placed in a safe deposit box jointly held by petitioner and Lankford. On or about November 11, 1974, petitioner acquired her own safe deposit box into which she placed the approximately $9,000 in cash and the certificate of deposit which she had removed from the jointly held safe deposit box. It was during this period that petitioner and Lankford were having marital difficulties. On November 15, 1974, the above-mentioned $10,000 certificate of Deposit was cashed. A $10,000 check was issued to petitioner and Lankford jointly. The cash and check were then divided by petitioner and Lankford as part of their divorce settlement. Petitioner used the approximately $9,100 she received to purchase a $7,000 certificate of deposit. *426 She deposited the balance in a savings account. Petitioner also received the 1971 Buick Riviera automobile and the household furnishings acquired during the marriage, with the exception of the stereo. OPINION Section 6013(e) provides that in certain circumstances an "innocent spouse" who filed a joint return may be relieved of liability for taxes otherwise due. The statutory provision provides in pertinent part: (1) In general.--Under regulations prescribed by the Secretary or his delegate, if-- (A) a joint return has been made under this section for a taxable year and on such return there was omitted from gross income an amount properly includable therein which is attributable to one spouse and which is in excess of 25 percent of the amount of gross income stated in the return, (B) the other spouse establishes that in signing the return he or she did not know of, and had no reason to know of, such omission, and (C) taking into account whether or not the other spouse significantly benefited directly or indirectly from the items omitted from gross income and taking into account all other facts and circumstances, it is inequitable to hold the other spouse liable for the *427 deficiency in tax for such taxable year attributable to such omission, then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent that such liability is attributable to such omission from gross income. Petitioner bears the burden of proving that each of the conditions set forth in subparagraphs (A), (B), and (C) of the statute have been satisfied. Fox v. Commissioner, 61 T.C. 704, 716 (1974); Adams v. Commissioner, 60 T.C. 300, 303 (1973); Sonnenborn v. Commissioner, 57 T.C. 373, 381 (1971). There is no issue as to the satisfaction of subparagraphs (A), the parties having stipulated that this condition has been satisfied. The question is whether the conditions imposed by section 6013(e)(1)(B) and (C) have been satisfied. Respondent contends that the requirements of neither subparagraph have been met. Petitioner, of course, argues to the contrary. We agree with respondent that section 6013(e)(1)(B) has not been satisfied. Section 6013(e)(1)(B) requires petitioner to establish that at the time she signed the return, she neither knew nor *428 had reason to know of the omission from the return of the income from the scrap sales. Respondent contends that petitioner knew or had reason to know of the omitted income because: (A) She endorsed checks made out by Oxford which were received by Lankford from the sale of scrap metal; (B) she made bank deposits with other checks which were similarly received; (C) she saw her bank account increase; (D) she accompanied Lankford when he sold some of the scrap metal; and (E) no income from Oxford was reported on the 1973 joint return which she signed. Petitioner asserts that the first time she knew of Lankford's activities was when he told her in July 1974. Whether petitioner knew or had reason to know of the omitted income is a factual question. In determining whether petitioner had reason to know, the standard to be applied is whether a reasonable person under the circumstances of the taxpayer at the time of the signing of the return could be expected to know of the omission from income. Sanders v. United States, 509 F. 2d 162 (5th Cir. 1975), Terzian v. Commissioner, 72 T.C. 1164, 1170 (1979). The question whether petitioner knew or had reason *429 to know of the omissions from income must be answered as of the time petitioner signed the joint income tax return for 1973. Although no date appears after petitioner's signature on the return and no other evidence was introduced at trial concerning when petitioner signed the return, it is a reasonable inference that petitioner signed the return on February 12, 1974, the date Lankford signed the return. [13] This is the same date as that alleged in the indictment as being (on or about) the date on which Lankford committed the section 7201 offense for which he was convicted. The evidence introduced to support petitioner's contention tat she did not know of Lankford's activities and the omission from income until July 1974 was the testimony of petitioner, her daughter, and Lankford. We realize that it is difficult to prove a negative, i.e., that petitioner did not know or have reason to know of the omitted income. Nonetheless, based on the evidence presented, we are not convinced that petitioner did not know or have reason to know of the omitted income. In the instant case, petitioner endorsed four checks, *430 which totaled in excess of $1,000, payable to Lankford from Oxford. Petitioner's testimony that she "mechanically" endorsed these checks at Lankford's direction without taking note of any particulars on the check is difficult to believe. Surely petitioner knew that Lankford was employed by Republic. It must have caused her to wonder why Oxford was making payments to Lankford. In addition to the checks which she endorsed, petitioner also made trips to the bank and deposited other checks received by Lankford from Oxford. We cannot believe that petitioner never noticed what she was depositing. Nevertheless, petitioner testified that she did not examine the 1973 return to determine whether any income was reported as having been received by Oxford. In addition to requiring the absence of actual knowledge, section 6013(a)(1)(B) also contains an objective standard. A spouse cannot close her eyes to "facts that might give her reason to know of the unreported income." Terzian v. Commissioner, supra at 1170; Mysse v. Commissioner, 57 T.C. 680, 699 (1972). We believe that a reasonably prudent taxpayer who was expised to the facts that petitioner *431 was would have reason to know of the omitted income. In addition to our belief that petitioner's handling of the checks from Oxford gave her reason to know, if not actual knowledge of, the omitted income, we are not convinced that petitioner's and Lankford's standard of living should not have caused petitioner to know that Lankford had a source of income in addition to his employment at Republic. We recognize that there were not the "unusual or lavish" expenditures during 1973 which courts have considered in determining whether a spouse had reason to know of the omitted income, Mysse v. Commissioner, supra at 698, and that expenses for ordinary support will not ordinarily put a spouse on notice of omitted income. Sanders v. United States, supra at 168. Nevertheless, in this case, the joint bank account which had originally been in petitioner's name increased by over $5,000 during 1973. Furthermore, Lankford had rather heavy obligations resulting from his prior marriage of which petitioner must have been aware. Lankford admitted that his compensation from Republic was not sufficient alone both to support petitioner and himself as he did *432 and to satisfy his financial obligations from his prior marriage. Furthermore, the omitted income was in excess of Lankford's earnings from Republic. We have no evidence as to whether petitioner knew what Lankford was earning or about his financial obligations. Petitioner had the burden of introducing such evidence. Knowledge of these facts, even if only in a general way, would give a prudent taxpayer reason to know of the omitted items. Other evidence also makes it difficult to believe that petitioner did not have reason to know of the omitted income when she signed the return. Both petitioner and Lankford testified that petitioner accompanied Lankford on occasions when he delivered scrap copper to the purchasers thereof. Although both testified that such occurrences took place in 1974, such testimony was not so definitive as to rule out the possibility that one such trip may have taken place prior to February 12, 1974. That petitioner may not have asked Lankford the reason for the trip or that she did not get out of the car does not diminish the inference that she had reason to know. Furthermore, the apparent frequency of the trips Lankford made to sell scrap makes it difficult *433 to believe that petitioner did not have reason to know. While it appears that Lankford did not volunteer information to petitioner, considering that he had her endorse checks from Oxford, he did not seem overly concerned with keeping his activities a secret from her. Accordingly, we conclude that petitioner has failed to satisfy the requirements of section 6013(e)(1)(B). Having reached this conclusion, it is not necessary to resolve whether the requirements of section 6013(e)(1)(C) were satisfied. But despite the absence of evidence that the Lankford's made "unusual or lavish" expenditures during 1973, we believe petitioner benefitted from the omitted income. Two joint bank accounts to which petitioner had access grew considerably during 1973 and petitioner received one-half of the balances in two joint accounts when she and Lankford were divorced in November of 1974. A new roof was placed on petitioner's house in 1973 to which she apparently retained title after the divorce. And petitioner also received a Buick automobile which was acquired in 1973. Such benefits may not meet the standard of "significant" benefits required by section 6013(e)(1)(C), S. Rept. No. 91-1537, 91st *434 Cong., 2d Sess. (1970), 3-4, 1971-1 C.B. 606, 607-608, and Sanders v. United States, supra at 170, and perhaps the circumstances might make it inequitable to hold petitioner liable, compare Terzian v. Commissioner, supra, but such circumstances do not negate petitioner's failure to satisfy section 6013(e)(1)(B). Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable year in issue, unless otherwise noted. ↩
2. Charles Lankford has previously filed a petition in the United States Tax Court (T.C. docket No. 7824-77) requesting a redetermination of the deficiency and addition to tax for 1973. On Nov. 15, 1978, this Court entered a decision, based upon the agreement of the parties, that Charles Lankford owed the deficiency and addition to tax as determined by respondent and set forth above.↩
3. The parties stipulated as to the amounts received by Lankford from the sale of scrap metal solely for purposes of litigating whether petitioner was an "innocent spouse" under sec. 6013(e)↩. 4. On Feb. 8, 1977, an indictment was filed against Lankford charging him with willfully and knowingly attempting to evade and defeat a large portion of income tax due and owing by him and petitioner for the calendar year 1973, and by him alone for the calendar year 1974, by filing false and fraudulent income tax returns for those years in violation of sec. 7201. For 1973 the indictment charged that the offense occurred on or about Feb. 12, 1974. Based on his plea of guilty, Lankford was convicted of the charges set forth in the indictment by the United States District Court for the Northern District of Alabama on Mar. 17, 1977. Petitioner was not indicted. ↩
5. The parties stipulated to these facts solely for purposes of litigating whether petitioner was an "innocent spouse" under sec. 6013(e)↩.
6. The parties did not introduce any direct evidence as to the amount of income Lankford derived from sales of scrap copper in 1974. The indictment charged, however, that he understated taxable income for 1974 by $33,398.↩
7. The dates and amounts of the 4 checks are as follows: ↩
Date
Amount
Aug. 8
$265.80
Aug. 16
257.40
Oct. 20
383.16
Oct. 22
377.58
8. Because the majority of the copper sales were made to Oxford, the parties focused on those sales and did not introduce any evidence concerning the disposition of the proceeds of the sales to Albertville.↩
9. No evidence was introduced concerning how petitioner supported herself prior to her marriage to Lankford, although it does appear that petitioner was married at some point prior thereto.↩
10. The original mortgage was payable in 72 monthly payments of $80 each, payments to begin on May 1, 1964. No evidence was introduced concerning why the mortgage was not satisfied in accordance with its original terms.↩
11. The joint return filed by Lankford and petitioner also contained an itemized deduction of $1,300 for alimony payments. No evidence was presented, however, concerning the items included in this amount.↩
12. During 1974 petitioner's daughter lived with Lankford and petitioner. The check repaid Lankford for living expense he had previously paid for the daughter.↩
13. See Biller v. Commissioner, T.C. Memo. 1976-97↩.