MARYANN FREDERICK, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Frederick v. Commissioner
Docket No. 7794-79.
United States Tax Court
T.C. Memo 1981-602; 1981 Tax Ct. Memo LEXIS 136; 42 T.C.M. (CCH) 1444; T.C.M. (RIA) 81602; October 19, 1981. *136 Petitioner does not qualify for relief as innocent spouse under sec. 6013(e), I.R.C. 1954. Edward P. Phillips, for the petitioner. Marion L. Weston, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: Respondent determined a deficiency in Ronald Frederick's and petitioner Maryann Frederick's 1977 income tax in the amount of $ 53,013.50. He also determined section 6651(a)(1) [1] and section 6653(a) additions to tax in the respective amounts *137 of $ 7,952.03 and $ 2,650.68. The instant case involves a petition by Maryann Frederick alone for a redetermination of the deficiency and additions to tax. The only issue for our decision is whether petitioner Maryann Frederick qualifies as an "innocent spouse" under section 6013(e) so as to be relieved of liability for the deficiency in and additions to tax. FINDINGS OF FACT Some of the facts were stipulated and they are so found. The stipulation of facts, the first supplemental stipulation of facts, and the exhibits attached thereto are incorporated herein by this reference. Petitioner Maryann Frederick (hereinafter petitioner) resided in Davie, Florida, when she filed her petition herein. She and Ronald Frederick (hereinafter Frederick), petitioner's husband, filed a joint individual Federal income tax return [2] for the taxable year 1977 with the Office of Internal Revenue Service at Chamblee, Ga. The only items entered on this return were interest income in the amount of $ 1,205 and tax liability of zero. The *138 signatures of petitioner and Frederick on this return are followed by the date June 7, 1978. [3]
Petitioner filed timely individual Federal income tax returns for each of the years 1974, 1975, and 1976, on which returns she reported gross income in the respective amounts of $ 2,867, $ 3,239, and $ 1,435. Prior to her marriage in April 1977 to Frederick, *139 petitioner has been married to another individual. Two children were born of this earlier marriage of whom petitioner obtained custody when this earlier marriage ended in divorce. Petitioner met Frederick in September 1972, at which time she was employed as a waitress. She married Frederick on April 17, 1977. Frederick purchased for approximately $ 800 matching wedding rings for petitioner and himself. Prior to their marriage, Frederick had begun supporting petitioner and her two children and, in June 1976, petitioner, Frederick, and the children began living together in rented quarters. After her marriage to Frederick, petitioner no longer worked outside the home. Frederick provided for the support of her and her children, and he was generous with regard to all of them. Frederick gave money to petitioner for household expenses. Sometimes the amount given was $ 50 per week and sometimes $ 100. Petitioner also had the use of credit cards and checking accounts (see infra). Frederick told petitioner that he was in the insurance business and was associated with Accurate Insurance Brokers. [4] Frederick also told petitioner that he had worked at various times as a skin *140 driver in salvaging shipwrecks, a real estate contractor, and a pawnbroker. Frederick spoke only vaguely about his work and he did not confide in his wife. He did not discuss with her his "business" dealings and he resisted attempts by petitioner to inquire into them. Petitioner and Frederick maintained a joint savings account (account No. 019-602-4) of the Commercial Bank of Kendall, which account they opened on September 26, 1976. During 1977 petitioner prepared the deposit slips for the following deposits to this account, which deposits were in cash (with the exception of the $ 500 deposited on September 26): Date
Amount
1977
Mar. 2
$ 563.00
Mar. 9
2,300.00
Mar. 15
3,191.00
Mar. 22
3,000.00
Apr. 6
.37
Apr. 29
3,000.00
June 1
1,000.00
June 5
1,168.00
Aug. 4
2,000.00
Sept. 19
1,324.00
Sept. 26
500.00
18,046.37
The deposit balance in the account on December 31, 1977, was $ 48,015.54. Interest of $ 1,564.72 was paid on this account in 1977. Petitioner closed this account on December 6, 1978, by *141 withdrawing the remaining balance of $ 1,046.74. Petitioner and Frederick also maintained three joint checking accounts. The first such account (account No. 110-1005) at the Commercial Bank of Kendall was made joint on March 10, 1977. Petitioner prepared the deposit slips for the following deposits to this account: Date of Deposit
Cash
Checks
Total
Jan. 26, 1977
$ 1,200
$ 1,200.00
Feb. 4
1,935
1,935.00
Feb. 6
1,000
1,000.00
Feb. 24
387
$ 10.00
397.00
Feb. 25
400
400.00
Mar. 1
2,272
34.30
2,306.30
Mar. 2
600
600.00
Mar. 9
600
600.00
May 3
533
533.00
May 9
521
521.00
June 1
400
400.00
Aug. 4
485
485.00
Sep. 19
625.00
625.00
Sep. 26
700
216.36
916.36
Oct. 11
355.00
355.00
Oct. 18
500
500.00
Nov. 8
400
350.00
750.00
11,933
1,590.66
13,523.66
Feb. 10, 1978
1,753
1,753.00
Feb. 28
1,160
1,160.00
Apr. 24
2,100
2,100.00
May 25
1,500
1,500.00
6,513
6,513.00
Petitioner wrote numerous checks on this account throughout 1977 and until June 7, 1978, including: (a) Weekly checks, beginning Nov. 14, 1977, of $ 25 each for "child support," payable to Frederick's *142 former wife; (b) Twenty-three checks payable to Southern Bell totaling $ 1,195.90, of which nine were written in 1977 for $ 424.65; (c) Monthly checks, beginning in November 1977, of $ 35 each for dental work for petitioner's daughters; (d) One check of $ 500, dated December 16, 1977, payable to herself; (e) Regular monthly checks, in the range of $ 12-$ 35, for lawn care, pool service and pest control; (f) One check of $ 550, dated January 5, 1978, for carpeting; (g) Checks during each of the months of December 1977, and January, March, April, and May 1978 payable to the Florida Power and Light Co. in amounts ranging between $ 236.03 and $ 107.05; and (h) A $ 50 check, dated January 12, 1978, given as a wedding gift. In addition to the foregoing, petitioner wrote numerous other checks against the account for everyday personal expenses such as newspapers and magazines, medical and dental, and utilities. Frederick also wrote numerous checks on this account. Petitioner and Frederick maintained a second checking account (account No. 30-300-0904) at the American Bank of Hallandale, Planation Office.This account was opened February 21, 1978, with a $ 2,900 deposit. *143 Petitioner closed this account at some point after November 3, 1978. Petitioner and Frederick maintained a third joint checking account at People's First National Bank. No evidence was presented as to petitioner's use of this account. It was closed by petitioner at some point after November 3, 1978. Petitioner and Frederick maintained two safe deposit boxes at Peoples First National Bank. Petitioner became a signatory to the boxes on October 11, 1976, prior to her marriage to Frederick. These boxes were surrendered by petitioner on November 3, 1978. In 1976, Frederick purchased a house in Cooper City, Fla., for approximately $ 65,900. Petitioner attended the closing of this purchase in December 1976, and she, her children and Frederick moved into it in January 1977. The house had four bedrooms, two baths, living room, dining room, kitchen, office-den and a swimming pool, and it was located on a golf course. Household furnishings included: (a) Kitchen and dining room: Double-door refrigerator (purchased after petitioner's and Frederick's marriage); microwave oven; 19" color TV; breakfront china closet; solid wood dining room table; and several high-backed chairs *144 (all the dining room furniture was purchased after the marriage); (b) Living room: Two sofas; console television; lamps; and built-in shelves with stereo. (c) Master bedroom: Double bed; two end tables; and a triple dresser and chest. New carpeting was purchased for the living room, dining room and bedrooms in January 1978. Early in February 1977 petitioner received from Frederick a new 1977 Mercury Marquis automobile. In 1978 Frederick bought a new 1978 Jayco Travel Trailer for petitioner and he bought a 1978 Chevrolet station wagon to pull the trailer, prior to taking petitioner and her children on a vacation trip. The trael trailer was registered in petitioner's name on May 19, 1978. Petitioner also owned a 1973 Mazda automobile and a 1979 Lincoln Continental automobile, title for which was issued on Nov. 27, 1978. Frederick also owned a 1978 Lincoln automobile, a Toyota jeep, and a 1946 Willy's jeep. All of the automobiles were sold by petitioner in 1979. Frederick was arrested on Nov. 3, 1978, and upon his arrest a notebook was found which contained an itemized list of currency amounts which were apparently obtained during burglaries. On the same day, the Cooper *145 City Police Department searched petitioner's and Frederick's house and they found and seized numerous items which they had reason to believe were taken during burglaries. [5] Included in the items were: Guns of all types (approximtely 100); large quantities of ammnunition; approximately 800 to 1,000 motel keys from various motels; burglary tools, key-making equipment, and a locksmith's kit; more than 50 items of currency, including mint sets, proof sets, and antique coins; approximately 50 cameras and related equipment; more than 30 radios, stereos, TV's and similar items; several traveler's checks which had the names of individuals who were later found to have been victims of criminal activity; various kinds of luggage; jewelry, including men's and women's watches, diamonds, and gold; binoculars; microphones; microscopes; knives; and intercoms. Most of the property seized was in plain sight or readily accessible. Much of it was taken from *146 the master bedroom, an office in which petitioner kept her sewing machine, and a bedroom in a converted garage. None of the property was in locked cabinets or closets. The notebook detailing the burglary activities was readily accessible on top of a desk. On November 3, 1978, Frederick executed a warranty deed by which he transferred the house to petitioner's parents. On the same day petitioner executed a quit-claim deed on the property in favor of her parents. Apparently, the transfer was intended to provide Frederick with money with which to post bond. Similarly, some of the money which petitioner obtained from selling the cars in 1979 and from closing various bank accounts was used for bond and legal expenses incurred in connection with Frederick's arrest. The remaining sums were used for petitioner's and her children's living expenses. The joint income tax return filed by petitioner and Frederick for 1977 was prepared by a certified public accountant. As previously, mentioned, the only item of income or expense listed on the return was $ 1,205 of interest income. Zero tax was shown as due. Exemptions were claimed for petitioner and Frederick; none were claimed for *147 her daughters. In the space provided on the return for occupations, Frederick is shown as retired.
Utilizing the notebook found when Frederick was arrested, respondent determined that petitioner and Frederick had understated income for 1977 in the amount of $ 122,869 and, consequently, he determined a deficiency in tax in the amount of $ 53,013.50. Respondent also determined section 6651(a)(1) and section 6653(a) additions to tax in the respective amounts of $ 7,952.03 and $ 2,650.68. OPINION The only issue for our decision is whether petitioner qualifies as an "innocent spouse" under section 6013(e). She has introduced no evidence or otherwise challenged the presumptive correctness of respondent's determination of a deficiency in tax and of additions thereto under sections 6651(a)(1) and 6653(a).Accordingly, said determination is substained. Section 6013(e) provides that in certain circumstances an "innocent spouse" who filed a joint return may be relieved of liability for taxes and additions thereto otherwise due. The statute provides in pertinent part: (1) In general.--Under regulations prescribed by the Secretary or his delegate, if-- (A) a joint return has been *148 made under this section for a taxable year and on such return there was omitted from gross income an amount properly includable therein which is attributable to one spouse and which is in excess of 25 percent of the amount of gross income stated in the return, (B) the other spouse establishes that in signing the return he or she did not know of, and had no reason to know of, such omission, and (C) taking into account whether or not the other spouse significantly benefited directly or indirectly from the items omitted from gross income and taking into account all other facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such omission, then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent that such liability is attributable to such omission from gross income. There is no issue as to the satisfaction of subparagraph (A), there being no dispute that income of $ 122,869, an amount in excess of the required 25 percent, was omitted from the joint return filed by petitioner and Frederick and that such income *149 was attributable to Frederick. The issue herein is whether the requirements of subparagraphs (B) and (C) have been met, petitioner, naturally, claiming that they have. Petitioner has the burden of proving that she qualifies as an "innocent spouse." Fox v. Commissioner, 61 T.C. 704, 716 (1974); Adams v. Commissioner, 60 T.C. 300, 303 (1973); Sonnenborn v. Commissioner, 57 T.C. 373, 381 (1971). Section 6013(e)(1)(B) requires petitioner to establish that in signing the return, she neither knew nor had reason to know of the omission from income. Petitioner's signature on the return is followed by the date June 7, 1978. Although petitioner testified that this date was written by Frederick, she does not claim that the return was not in fact signed on that date. Accordingly, given the foregoing and the fact that the return introduced in evidence is stamped as having been received by the Internal Revenue Service on June 20, 1978, we will proceed on the basis that she signed the return on June 7, 1978. Whether petitioner knew or had reason to know of the omitted income as of that date is a factual question. In determining whether *150 petitioner had reason to know, the standard to be applied is whether a reasonable person under the circumstances of the taxpayer at the time of the signing of the return could be expected to know of the omission from income. Sanders v. United States, 509 F.2d 162 (5th Cir. 1975); Terzian v. Commissioner, 72 T.C. 1164, 1170 (1979). A spouse cannot close her eyes to "facts, that might give her reason to know of the unreported income." Terzian v. Commissioner, supra.
In discussing whether petitioner knew or had reason to know of the omitted income, it is appropriate to first mention the circumstances under which petitioner signed the return, something concerning which we have made no finding of fact. The accountant who prepared the joint return testified that his recollection was that both Frederick and petitioner were present at an interview at which he solicited the information necessary to prepare the return. Clearly, had petitioner been present at such a meeting, any protest that she was unaware of what was reported thereon could not be believed.The import of petitioner's testimony, however, was that she was not present at *151 any such interview, that Frederick brought the return to their home for her to sign after it was prepared, and that he presented it to her in such a way as to allow her only to sign the return without examining the information reflected thereon. In our opinion, it is unnecessary to make a finding as to the circumstances under which petitioner signed the return. Even if petitioner signed the return under the general circumstances as she described, we cannot believe that she did not notice the amount of income reported and the tax due thereon since those figures are shown on the form only a few inches above where she signed. Petitioner had filed single individual income tax returns for the taxable years prior to her marriage to Frederick. This experience must have made her sufficiently familiar with the forms so as to enable her to spot the income and tax due amounts, even if Frederick was pressuring her to sign the return quickly. Furthermore, we do not believe Congress intended in section 6013(e)(1)(B) to give relief to a spouse who simply did not look at the amount of income reported on the return, unless it is clearly established that he or she was forced under duress to sign *152 the return without looking at it. [6] The evidence here does not support such a conclusion. As to the question of whether she knew or had reason to know of the omitted income, from the evidence of record we can only conclude that, at a minimum, under the circumstances petitioner should have known. The only income reported on the return was interest income of $ 1,205, which amount, at that, was not all the interest earned on petitioner's and Frederick's joint savings account. No amounts were reported as income from any business, although petitioner was told by Frederick that he was in the insurance business. Even if Frederick was secretive about his "business" dealings and petitioner was actually unaware of the true nature of his activities, nonetheless, petitioner had to have been aware that he was receiving income from some source. Petitioner's involvment in the financial affairs of the family should have alerted her to the fact that a substantial amount of income was being received. In addition, the family's lifestyle should have provided *153 similar information. The income reported on the joint return for 1977 was less that that reported by petitioner individually for each of the 3 prior taxable years when she was not married and was working as a waitress. Petitioner admitted that her standard of living improved after Frederick began to support her and her children. How did petitioner think this was possible on less income than she had reported in earlier years? The income reported in 1977 was clearly not sufficient to provide for the standard of living that was enjoyed. Such fact should have caused petitioner to know that Frederick had unreported income. [7]
Additionally, *154 petitioner was very much involved in the financial affairs of the household. As detailed in the Findings of Fact, petitioner made numerous deposits to and wrote numerous checks on various joint bank accounts. Moreover, there existed a $ 48,000 balance in one account at year's end. Such factors should have (if in fact they did not) given petitioner some idea that a substantial amount of income was being received.
It would be of little use to further expound on the facts presented, which facts persuade us that a reasonably prudent person in the circumstances should have know that Frederick had greater income than reported on the return.Suffice to say that the existence of cash amounts which passed through the joint bank accounts, the frequency and amount of petitioner's expenditures, and the material acquisitions made (including the items found by the police), allow for only one conclusion, that being that petitioner had reason to know of the omitted income. The various cases [8] cited by petitioner in which taxpayers have been found to have satisfied section 6013(e)(1)(B) are of no particular benefit since each case, naturally, must be decided on its own facts. The Court in those *155 cases was persuaded that the taxpayer-spouses did not have reason to know of the omitted income. In the instant case, we are convinced that the opposite is true. Petitioner's involvement in the financial affairs of the family should have given her some idea of Frederick's income and she must have known that this amount was far in excess of the income reported. Accordingly, we conclude that petitioner has not satisfied the requirements of section 6013(e)(1)(B) and, consequently, that she is not entitled to the protection of innocent-spouse status. Having reached this conclusion, it is unnecessary to decide whether the requirements of section 6013(e)(1)(C) were satisfied. Although the possibility that a sizable portion of the assets accumulated by petitioner and Frederick may have been used in connection with Frederick's arrest and/or may have been forfeited when he apparently fled to avoid prosecution, this possibility alone does not indicate that it would be inequitable to hold petitioner *156 liable (thereby satisfying section 6013(e)(1)(C)) and it in no way affects the knowledge requirement of section 6013(e)(1)(B). Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable year in issue.↩
2. Petitioner in a brief statement in her reply brief alleges that she signed the return under duress, citing, interalia, Brown v. Commissioner, 51 T.C. 116 (1968), which held that a purported joint return signed by a taxpayer-wife under duress was not a joint return within the purview of sec. 6013. If by this brief statement petitioner intended to raise the question of whether petitioner's and Frederick's return for 1976 was a "joint" return, her contention is untimely and will not be considered. Aero Rental v. Commissioner, 64 T.C. 331, 338↩ (1975). Moreover, there is no evidence of record to support petitioner's allegation. 3. The copy of the return introduced into evidence bears a stamp which indicates that the return was received by the Internal Revenue Service on June 20, 1978.↩
4. Accurate Insurance Brokers, Inc., was incorporated in the State of Florida in August 1977. One of its incorporators was Frederick.↩
5. The property seized was eventually levied upon and obtained by the Internal Revenue Service in connection with a jeopardy assessment for petitioner's and Frederick's taxable year 1977 and, apparently, for Frederick's taxable year 1978.↩
6. See Adams v. Commissioner, 60 T.C. 300 (1973); Teplitz v. Commissioner, T.C.Memo. 1978-45↩.
7. The various cases cited by petitioner in which it was found that "unextravagant" standards of living were not sufficient to alert the "innocent" spouses as to any amounts of omitted income are inapposite. In those cases, the reported income amounts were sufficient to justify the standards of living enjoyed. In the instant case, the fact that petitioner and Frederick may have enjoyed the same standard of living as their neighbors does not alter the fact that such standard was in no way potentially enjoyable based on the amount of income reported.↩
8. Mysse v. Commissioner, 57 T.C. 680 (1972); Hayes v. Commissioner, T.C.Memo. 1975-223; Anderson v. Commissioner, T.C.Memo. 1975-104↩.