ROBERT L. STEVENS AND MADELINE M. STEVENS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Stevens v. Commissioner
Docket No. 28017-83.
United States Tax Court
T.C. Memo 1988-63; 1988 Tax Ct. Memo LEXIS 63; 55 T.C.M. (CCH) 135; T.C.M. (RIA) 88063; February 22, 1988; As amended February 22, 1988 Madeline M. Stevens, pro se. Lourdes M. DeSantis, for the respondent. SWIFT
MEMORANDUM FINDINGS OF FACT AND OPINION SWIFT, Judge: In a timely statutory notice of deficiency dated June 28, 1983, respondent determined deficiencies in petitioner's joint Federal income tax for 1976, 1977, 1978, and 1979 as follows: Year
Deficiency
1976
$  39,350.40
1977
65,905.87
1978
151,481.00
1979
89,519.00
*64 The sole issue for decision is whether petitioner Madeline M. Stevens qualifies for relief from liability as an innocent spouse under section 6013(e). [1]
FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners resided in Sarasota, Florida at the time the petition was filed. Petitioners filed joint Federal income tax returns for 1976, 1977, 1978, and 1979. Hereinafter references to petitioner generally will be to Madeline M. Stevens. Petitioner graduated from Centenary College for Women in 1958 with an Associate of Arts degree. While in college, petitioner's major areas of study included English and history. In August 1965, petitioner married Robert L. Stevens. At the time of marriage, petitioner and Mr. Stevens had a second child. When petitioner and Mr. Stevens were first married, Mr. Stevens was enlisted in the United States Navy. Upon discharge from the Navy, Mr. Stevens worked for several years as a computer specialist designing software and payroll *65 systems. Later Mr. Stevens sold insurance and eventually became a licensed securities dealer. As a licensed securities dealer, Mr. Stevens was registered with the National Association of Securities Dealers (NASD) and worked for a securities firm. In May of 1974, Mr. Stevens formed his own securities firm, R. L. Stevens and Company, Inc., which was a NASD broker/dealership that sold life insurance annuities and tax shelters. The corporation was incorporated under the laws of the state of Pennsylvania as an electing small business corporation under subchapter S of the Code. Mr. Stevens was president and treasurer of the corporation, and petitioner was the corporation's secretary. Petitioner occasionally performed secretarial services for R. L. Stevens and Company. Petitioner and Mr. Stevens did not enjoy a high standard of living in the early days of R. L. Stevens and Company. Sometime during 1976, one of their cars was repossessed because they could not make the car payments. Beginning in late 1976, however, petitioner and Mr. Stevens started to enjoy a high and steadily increasing standard of living. In 1976, Mr. Stevens purchased a motor home. During that year, petitioner *66 and her two children took a vacation and traveled across the United States in the motor home purchased by Mr. Stevens. During that vacation, Mr. Stevens met petitioner and the children in various locations across the country. In early 1977, petitioner, Mr. Stevens, and their children moved to Sarasota, Florida. Petitioner and Mr. Stevens purchased a home with a swimming pool which was financed with a $ 50,000 cash downpayment and a $ 100,000 mortgage. Petitioner was present with Mr. Stevens at the closing on the home. Also in 1977, Mr. Stevens formed a second corporation, R. L. Stevens Investment Corporation, which was incorporated under Florida law as an electing small business corporation under subchapter S of the Code. The purpose of R. L. Stevens Investment Corporation was, among other things, to sell tax shelters that were not in the form of securities. R. L. Stevens Investment Corporation was not a NASD securities firm. Mr. Stevens was the sole shareholder of R. L. Stevens Investment Corporation and also was its president and treasurer. Petitioner was the secretary of R. L. Stevens Investment Corporation and worked for the corporation on a part-time basis. In 1978, *67 Mr. Stevens relocated the office of R. L. Stevens Investment Corporation from an office building in Sarasota to his 58-foot houseboat docked at the Sarasota City Marina. Mr. Stevens also operated R. L. Stevens and Company from his houseboat. After the offices moved to the houseboat, petitioner worked for R. L. Stevens Investment Corporation on a regular basis for several months. Petitioner's employment responsibilities included recordkeeping in relation to the sale of tax shelters, compiling monthly reports required by the Securities Exchange Commission, and typing business letters. In 1979, petitioner and Mr. Stevens sold their Sarasota, Florida home and moved into a larger, more expensive home on the waterfront in Siesta Key, Florida. This home had a swimming pool, jacuzzi, and tennis court on an adjacent lot. The purchase price of the home was approximately $ 200,000. (This home later was sold by petitioner and Mr. Stevens for $ 600,000.) Also in 1979, Mr. Stevens moved the offices of his corporations from the houseboat to the new home in Siesta Key, Florida. While the offices were located in the Siesta Key home, syndicators of tax shelters visited Mr. Stevens to discuss *68 with him the pros and cons of the tax shelters they promoted. On occasion, these discussions were in the presence of petitioner. In addition, Mr. Stevens and petitioner entertained promoters of and investors in tax shelters at large formal parties and seminars that were held in petitioner's Siesta Key home. At those parties, business discussions occurred in the presence of petitioner. From 1976 through 1979, petitioner and Mr. Stevens owned at any one time up to three boats, including at least one Excalibur, and numerous cars, including Cadillacs and twin XKE Jaguar convertibles, one each for petitioner and Mr. Stevens. They also owned a second home (the Riegels Landing home) which was used for entertaining business associates and other guests. Petitioner and Mr. Stevens' monthly household expenses during the period 1976 through 1979 were as high as $ 6,000 per month. Petitioner paid the household expenses either from funds given to her by Mr. Stevens or with funds withdrawn from joint personal and business checking accounts. Petitioners' joint Federal income tax returns for each of the years in issue were prepared by accountants who met with petitioner and Mr. Stevens in *69 their homes to discuss the returns. On their joint Federal income tax returns for 1976 through 1979, petitioners reported total income, deductions, and net losses in the following amounts: Year
Income
Deductions
Net Loss
1976
$ 101,253
* $ (316,911)
$ (215,658)
1977
145,073 ** (335,908)
(190,835)
1978
276,567 *** (427,009)
(150,442)
1979
201,129
(185,181)
( 15,948)
Petitioner and Mr. Stevens were legally separated in November of 1983, and divorced on June 1, 1984. In conjunction with the dissolution of the marriage, the Florida Circuit Court of the Twelfth Judicial Circuit in Sarasota County, Florida ordered Mr. Stevens to pay alimony to petitioner in the amount of $ 1,000 per month, and the court awarded the family home in Siesta Key to petitioner. Petitioner was directed by the Florida Circuit Court to sell the Riegels Landing home and to use a portion of the proceeds from that sale to pay petitioner and *70 her husband's 1976 joint Federal income tax liability. Petitioner sold the Riegels Landing home and used a portion of the proceeds to pay various expenses related to that home. Petitioner also invested a portion of the funds from the sale of the home in a Dean Witter investment account that she opened in her own name. Petitioner did not pay the 1976 joint Federal income tax liability as directed by the Florida Circuit Court. In his notice of deficiency, respondent disallowed deductions in the total amounts of $ 316,911 for 1976, $ 335,908 for 1977, $ 426,835 for 1978, and $ 163,864 for 1979. Respondent also increased petitioner and Mr. Stevens' income by $ 3,332 in 1978 and disallowed an investment tax credit in the amount of $ 370 claimed by petitioner and Mr. Stevens in 1979. Petitioners concede the deficiency determinations for 1976 through 1979 but reserve the right to carry back to 1977, 1978, and 1979 a claimed net operating loss that arose in 1980, if such loss is allowed under applicable statutes and regulations. Petitioners have filed a separate petition with respect to a deficiency in their 1980 joint Federal income tax, arising in part from the disallowance of the *71 above-mentioned net operating loss. Trial in that case is scheduled for a later date. OPINION Where a husband and wife file a joint Federal income tax return, each spouse generally is jointly and severally liable for the tax regardless of the source of income reported on the return and regardless of the fact that one spouse may be less informed about the contents of the return than the other. Sec. 6013(d)(3); Sonnenborn v. Commissioner,57 T.C. 373, 381 (1971). Under section 6013(e)(1), however, a taxpayer spouse may qualify as an innocent spouse and be relieved from such joint and several liability if the following requirements, among others, are satisfied: (1) There is a substantial understatement of tax attributable to grossly erroneous items of the other spouse on such return, (2) the taxpayer spouse did not know, and had no reason to know, that there was a substantial understatement of tax on the return, and (3) taking into account all the facts and circumstances, it is inequitable to hold the taxpayer spouse liable for the deficiency attributable to the substantial *72 understatement.[2] Petitioner has the burden of proving that the statutory requirements are met. Rule 142(a); Sonnenborn v. Commissioner, supra at 381-383. *73 Prior to the Tac Reform Act of 1984, Pub. L. 98-369, 98 Stat. 494, in order to qualify for innocent-spouse relief, the understatement of tax had to be attributable to items of omitted income. The Tax Reform Act of 1984 expanded the innocent-spouse provisions to include understatements attributable to deductions claimed on the joint return for which there was no basis in fact or law. Sec. 6013(e)(2). [3] This expansion of the definition was made retroactive to all open tax years. Tax Reform Act of 1984, supra at 803. Respondent concedes herein that the substantial understatements of tax reflected on petitioner's joint returns for the years 1976 through 1979 are attributable to grossly *74 erroneous items (namely, to deductions claimed for which there was no factual or legal basis) of Mr. Stevens. Respondent argues, however, that petitioner has not established that she did not have actual knowledge of the grossly erroneous items, that she had no reason to know of them, and that it would be inequitable to hold her liable therefor. In determining whether petitioner had reason to know of the erroneous deductions claimed on the return, we apply the same reasonable-person test applied in the innocent-spouse cases that concern omitted income. That test is "whether a reasonable person under the circumstances of the taxpayer at the time of signing the return [would] be expected to know of the omissions." Shea v. Commissioner,780 F.2d 561, 566 (6th Cir. 1986), affg. a Memorandum Opinion of this Court. Accord Sanders v. United States,509 F.2d 162, 165-168 (5th Cir. 1975); Terzian v. Commissioner,72 T.C. 1164, 1170 (1979). Generally relevant to that determination is the presence of unusual or lavish expenditures, Mysse v. Commissioner,57 T.C. 680, 699 (1972), *75 and the participation by the alleged innocent spouse in the bookkeeping or business affairs of the other spouse, Quinn v. Commissioner,62 T.C. 223, 230-231 (19744), affd. 524 F.2d 617 (7th Cir. 1975). One author has suggested, however, that in innocent-spouse cases where the substantial understatements of tax are attributable to deductions, the mere presence of unusual or lavish expenditures may not be as significant as they are where the substantial understatements of tax are attributable to omitted income. [4] Certainly we would agree that in determining whether an alleged innocent spouse had reason to know of the deductions at a time when the family was incurring lavish expenditures, it also is appropriate to consider whether the family had sufficient income above and beyond the deductions to support the lavish expenditures. We also believe that in cases involving deductions, the alleged innocent spouse's participation in the business affairs of the other spouse and in the family's financial affairs is particularly significant. *76 Petitioner contends that from 1976 through 1979 she was a housewife concerned with raising her children and that her role as housewife did not include management of the family's finances. Petitioner argues that her knowledge of Mr. Stevens' business was limited, that she did not participate in the businesses, nor did she do any bookkeeping for either of the businesses. Further, petitioner argues she did not want the expensive cars, boats, or jewelry that were purchased. Respondent points out that petitioner knew that Mr. Stevens sold tax shelters, that petitioner was an officer in both of Mr. Stevens' corporations, and that on occasion petitioner performed secretarial services for both corporations. Respondent emphasizes that petitioner enjoyed a very high standard of living that included unusual and lavish expenditures. For the following reasons we agree with respondent. Petitioner participated in Mr. Stevens' business affairs. Petitioner held the office of secretary for both R. L. Stevens and Company, and R. L. Stevens Investment Corporation during the years in issue. Petitioner performed secretarial services for both of the corporations. During 1976 through 1979, petitioner *77 and Mr. Stevens held parties and seminars in their home for the promoters of tax shelters and investors in tax shelters who did business with Mr. Stevens. The large losses reported on the tax returns are inconsistent with the lavish lifestyle enjoyed by petitioner. Under these circumstances, the expenditures incurred to support that lifestyle, combined with petitioner's involvement in the business, should have given petitioner reason to know that the deductions claimed on the joint Federal income tax returns during the years in issue had no basis in fact or law. It is difficult to believe that the family could have lived like petitioner and Mr. Stevens did without petitioner suspecting that the substantial losses that were being claimed on the tax returns were without foundation. Petitioner has not established that she did not know or have reason to know of the substantial understatements of tax attributable to grossly erroneous items for 1976 through 1979. Accordingly, petitioner does not qualify as an innocent spouse and therefore may not be relieved of her tax liability for those years. The parties also contest whether the substantial understatements of tax for 1976 through *78 1979 exceed the specified percentage of petitioner's adjusted gross income for the preadjustment year as required by section 6013(e)(4)(B). Because petitioner does not qualify as an innocent spouse, we need not address that issue. [Text Deleted by Court Emendation] Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
*. Does not reflect itemized deductions of $ 7,669 listed on the return. ** Does not reflect itemized deductions of $ 12,583 listed on the return. *** Does not reflect itemized deductions of $ 14,432 listed on the return. ↩
2. Sec. 6013(e)(1) provides as follows: (e) Spouse Relieved of Liability in Certain Cases. -- (1) In general. -- Under regulations prescribed by the Secretary, if-- (A) a joint return has been made under this section for a taxable year, (B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse, (C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and (D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement, then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such substantial understatement. ↩
3. Sec. 6013(e)(2), provides as follows: (2) Grossly erroneous items. -- For purposes of this subsection, the term "grossly erroneous items" means, with respect to any spouse -- (A) any item of gross income attributable to such spouse which is omitted from gross income, and (B) any claim of a deduction, credit, or basis by such spouse in an amount for which there is no basis in fact or law. ↩
4. Borison, "Innocent Spouse Relief: A Call for Legislative and Judicial Liberalization," 40 Tax Lawyer 819, 836↩ (1987).