RAY F. TURNER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Turner v. Commissioner
Docket No. 20594-84.
United States Tax Court
T.C. Memo 1988-339; 1988 Tax Ct. Memo LEXIS 365; 55 T.C.M. (CCH) 1425; T.C.M. (RIA) 88339; July 29, 1988. Jack Rogers, for the petitioner. Deborah G. Leonard, for the *367 respondent. FAY
MEMORANDUM OPINION AND FINDINGS OF FACT FAY, Judge: The case was assigned to Special Trial Judge Daniel J. Dinan pursuant to the provisions of section 7443A(b) of the Internal Revenue Code of 1986 and Rules 180, 181 and 183. [1] The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE DINAN, Special Trial Judge: Respondent determined deficiencies in petitioner's Federal income taxes and additions to tax as follows: Additions to Tax
Year
Deficiency
Section 6653(b)
1976
$ 7,497.80
$  3,748.90
1977
6,903.80
3,451.90
1978
10,600.60
5,300.30
1979
19,436.60
9,718.30
1980
28,755.00
14,377.50
1981
31,111.00
15,555.50
Petitioner timely filed a petition with this Court on June 25, 1984, in which he disputed the entire deficiency determined *368 by respondent for each year; when he filed his petition, he lived in Franklin, Indiana. Respondent has conceded that the amount of the deficiency for 1979 should be reduced to $ 18,072.12 and the amount of the deficiency for 1981 should be reduced to $ 29,851.58. The additions to tax under section 6653(b) were accordingly reduced to $ 9,036.06 for 1979 and to $ 14,925.79 for 1981. The issues presented for decision are (1) whether petitioner failed to include the following amounts in gross income: $ 44 in 1978, $ 1,200 in 1980 and $ 2,900 in 1981, (2) whether petitioner is relieved from liability for the deficiencies and additions to tax determined under the provisions of section 6013(e), and (3) whether petitioner is liable for additions to tax under section 6653(b) for fraud. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioner and his wife Barbara Turner filed joint Federal income tax returns for the years in dispute. They have two children, Kirch Turner and Royce Turner. Petitioner is a man who enjoys the artistic components of life but avoids the realities of day to day family finances. His education, profession and hobbies reflect *369 hi outlook on life. Petitioner's formal education was in art. He received a bachelor's degree in fine arts from Indiana University, John Herron Art Institute. He formerly had been employed as a commercial artist and as an art teacher. During the years in issue, he was employed by his own company as an interior window designer. He spent much of his spare time making beautiful interior improvements to his home, and collecting antiques. Petitioner did not actively participate in family finances. Before his marriage to Barbara, petitioner did not have his own checking account. Instead, he would give his checks to his mother who would then process them through her account. After petitioner was married he simply added his name to Barbara's checking account. Petitioner did not exercise any control over the joint account; it was Barbara who controlled the family finances. She kept the account information of the family finances at her place of employment and refused to discuss matters dealing with them with petitioner. [2]
*370 During the years in issue, petitioner was employed by Moon & Star, Inc., d/b/a Shades of Curtis, as an artist and designer. He was also president, treasurer and 50 percent stockholder of the company. His wife owned the remaining half of the company and was vice-president and secretary. The corporation had its own checking account. Both petitioner and his wife had signatory authority on the account. However, even though petitioner was an employee, officer and major shareholder of Moon & Star, Inc., he was unaware of its financial condition. As with his personal financial affairs, his business financial affairs were managed by his wife. She took responsibility for the monetary aspects of his life and left him time to pursue his artistic endeavors. Petitioner's wife, Barbara Turner, is a convicted felon. Petitioner appears before this Court because of the criminal mischief of his wife. During the years in issue, Barbara Turner was a bookkeeper at Mather, Dawson & Phelps, Inc., an architectural firm. While employed as a bookkeeper, she embezzled $ 241,864.84 [3] from her employer by overstating bills the firm owed, paying the correct amount to the creditor, and pocketing *371 the balance. Barbara's felonious activities were discovered after she resigned from the firm in 1982. She was arrested on August 2, 1982, and subsequently pled guilty to one count of check forgery. [4]
Needless to say Barbara did not include the embezzled money on their joint Federal income tax returns filed during the years in issue. It is this omission of income which gave rise to the deficiencies in tax in issue. Barbara was able to conceal her criminal activity from her husband by controlling the domestic purse strings and by withholding financial information from him. Her control of the family purse, coupled with the fact that petitioner was uninterested in family financial affairs allowed Barbara to perpetrate her criminal acts without her husband's knowledge. Petitioner's ignorance of Barbara's embezzlement, however, *372 does not establish that he did not benefit from the fruits of Barbara's crimes. The Turner family's standard of living was relatively extravagant based upon their reported income. [5] This is true even when taking into account the fact that petitioner and his wife received considerable monetary gifts during the years in issue and that they may have owned property prior to the years in issue. Petitioner made significant improvements to his home, was able to purchase valuable antiques, was able to own luxury automobiles, and was able to join an exclusive men's club during the years in issue. In addition, petitioner's children were allowed to engage in a variety of expensive recreational activities. Furthermore, and more importantly, petitioner's business, Moon & Star, Inc., d/b/a Shades of Curtis, was able to stay solvent because of the investment in it of funds embezzled by Barbara. [6] Barbara also gave expensive parties and generally lived a lifestyle far in excess of that which could be maintained by the reported income. Petitioner and his wife financed many of their purchases and activities by taking out loans. The borrowed money was repaid with money from petitioner's checking *373 account which was the same account into which the money embezzled by Barbara was deposited. Therefore, items purchased on credit were indirectly purchased with stolen money. Most of the embezzled funds were deposited into the Turner's joint checking account. This gave petitioner access to the embezzled money because he had signing authority over the account. Even if he was not actually aware that he was spending the embezzled funds, he was benefiting from those funds because he was spending them. In fact the embezzled funds seeped into all their family finances. They were comingled with their legitimate earnings in their checking account and were used to purchase everything from day to day necessities to expensive antiques and collectables. *374 What the record does not disclose, however, is any evidence that petitioner was actually aware of this extra feloniously acquired income. The record contains abundant evidence which shows that petitioner relied on Barbara's business acumen to maintain and oversee the family finances. There is one additional matter which should be noted. During the trial of this case, evidence was produced which disclosed that petitioner and his wife earned the following amounts of income from fees and rent which they failed to report as gross income: Year
Amount
1978
$   44.00
1980
1,200.00
1981
2,900.00
Respondent at trial orally moved to amend his answer to include these amounts. The Court granted respondent's oral motion to allow the pleadings to conform to the proof introduced at trial. Petitioner had no explanation for these omissions from income and did not produce any evidence to refute respondent's assertion that these amounts should be included in gross income. OPINION The first issue we must decide is whether petitioner should have included $ 44.00 in gross income in 1978; $ 1,200 in gross income in 1980 and $ 2,900 in gross income in 1981. Since this *375 issue was raised by respondent in his amended answer, he bears the burden of proof on his issue. Rule 142(a). The testimony was uncontroverted. Petitioner received $ 44.00 in installation fees in 1978 which he failed to report as gross income. In 1980 there was a payment to Barbara Turner of $ 850 which was not reported as gross income on their joint return. In 1980, petitioner and his wife failed to include rent payments they received in the amount of $ 350. In 1981 petitioner and his wife failed to report $ 2,900 in professional fees paid to Barbara Turner. Respondent has met his burden of proof on this issue. The amounts of $ 44.00, $ 1,200.00 and $ 2,900.00 were income to petitioner and his wife in the years 1978, 1980 and 1981, respectively, and should have been reported as income on their returns for those years. Petitioner has offered no evidence to the contrary. Therefore we find for respondent on this issue. The second issue we must decide is whether petitioner is liable for the deficiencies in tax which arose from his and his wife's failure to report the embezzled funds as gross income on their returns for the years in issue. Section 61(a) provides that *376 gross income includes all income from whatever source derived. Commissioner v. Glenshaw Glass Co.,348 U.S. 426 (1955). It is well-established that gross income includes illegally begotten gains. James v. United States,366 U.S. 213 (1961). Therefore, the money that Barbara Turner embezzled from her employer is gross income to her and should have been reported in the year it was received. Solomon v. Commissioner,732 F.2d 1459 (6th Cir. 1984), affg, per curiam a Memorandum Opinion of this Court. Barbara Turner and petitioner filed joint returns during the years in issue. When a husband and wife file a joint return they are jointly and severally liable for the tax shown thereon. Section 6013(d)(3). Consequently, petitioner is individually liable for the tax computed on the embezzled income notwithstanding the fact that he was not an accessory to the embezzlement. Occasionally this rule of joint and several liability causes an inequitable result. Congress has provided a remedy for this inequitable result, section 6013(e), the so-called "innocent spouse rule." That rule provides that an innocent spouse is relieved from liability *377 for tax on a joint return if four conditions are met: (A) a joint return has been made under this section for a taxable year, (B) on such return there is a substantial underpayment of tax attributable to grossly erroneous items of one spouse, (C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and (D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement * * * [Section 6013(e)(1). [7]] The parties have agreed that the first two conditions have been met. Therefore, we must determine if petitioner knew or had reason to know of the substantial understatement of tax in this and his wife's returns for the years in issue and whether it is inequitable to hold him liable for the understatement *378 in tax. Petitioner has the burden of proving that he is entitled to relief under the innocent spouse rule of section 6013(e). Sonnenborn v. Commissioner,57 T.C. 373 (1971); Stone v. Commissioner,56 T.C. 213 (1971); Hicks Co. v. Commissioner,56 T.C. 982 (1971), affd. 470 F.2d 87 (1st Cir. 1972). We turn to the first condition in dispute, section 6013(e)(1)(C), which requires petitioner to establish "that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement." The issue here is essentially factual, and the test to be applied is what a reasonably prudent person would or should know of the circumstances, keeping in mind such person's level of intelligence, education and experience. Shea v. Commissioner,780 F.2d 561, 566 (6th Cir. 1986), affg. on this issue a Memorandum Opinion of this Court; Sanders v. United States,509 F.2d 162, 166-167 (5th Cir. 1975); Estate of Jackson v. Commissioner,72 T.C. 356 (1979). Petitioner in this case is an intelligent, educated person. However, he was totally *379 oblivious to the status of his household finances. Even so, he should have known that the family lived a lifestyle in excess of their means. In fact, petitioner testified that he was aware of the family's legitimate income and their expenses. A reasonably prudent person would be cognizant of the fact that the family's expenditures exceeded their legitimate income. This is true even taking into consideration the numerous loans petitioner and his wife had, the gifts they received, and any property they owned prior to 1976. This discrepancy between actual and reported income may not be ignored. Petitioner had information from which a person of ordinary intelligence could infer that substantial understatements had been made. Petitioner should have known. Therefore, he has failed to satisfy the conditions of section 6013(e)(1)(C). The other condition in dispute under the innocent spouse rule, section 6013(e)(1)(D), says "taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement." The regulations [8] state that an important factor "is whether *380 the person seeking relief significantly benefited, directly or indirectly, from the items omitted from gross income." Section 1.6013-5(b), Income Tax Regs. However, normal support is not a significant benefit. Section 1.6013-5(b), Income Tax Regs.; Mysse v. Commissioner,57 T.C. 680 (1972). The evidence in this case clearly demonstrates that petitioner benefited directly and indirectly from the embezzled income. Petitioner's household income significantly increased over the years in issue because of the embezzlement. Most of the embezzled funds went into petitioner's joint checking account. This gave him access to the funds. Even if he was aware of the fact that the embezzled funds were in the checking account, it is inconceivable *381 to this Court that petitioner did not spend some of the embezzled money on his own account. Indeed, the record shows that petitioner drew checks on the account during the time his wife was depositing the embezzled funds. Furthermore, petitioner's benefit from that increase in income was more than just support. Petitioner was able to make substantial physical improvements to his home, was able to allow his children to participate in expensive sports and recreation, and was able to purchase valuable antiques. Petitioner also benefited from the omitted income through his business, Moon & Star, Inc. There was evidence in the record that some of the embezzled money was used to pay expenses of the business which helped keep the business afloat. In summary, petitioner significantly benefited from the omitted income and the benefits were in excess of support. Based on this finding, it is not inequitable to hold petitioner liable for the deficiencies in issue. Consequently, because petitioner failed to meet his burden of proof on two of the four conditions or elements of section 6013(e)(1), he is not entitled to relief as an innocent spouse. Accordingly, petitioner is jointly and *382 severally liable for the deficiencies in tax arising from the omitted embezzled income. The third and final issue we must decide is whether petitioner is liable for the addition to tax under section 6653(b) for fraud. To establish fraud, respondent must show that the taxpayer intended to evade taxes known or believed to be owing by conduct calculated to conceal, mislead, or otherwise prevent the collection of such taxes. Rowlee v. Commissioner,80 T.C. 1111 (1983). Respondent must prove fraud by clear and convincing evidence. Section 7454(a); Rule 142(b). The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Gajewski v. Commissioner,67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud will never be presumed. Beaver v. Commissioner,55 T.C. 85, 92 (1970). Fraud may, however be proved by circumstantial evidence because direct proof of the taxpayer's intent is rarely available. Spies v. Commissioner,317 U.S. 492, 499 (1943); Powell v. Granquist,252 F.2d 56, 61 (9th Cir. 1958); Rowlee v. Commissioner, supra at 1123. *383 The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Stone v. Commissioner,56 T.C. 213, 223-224 (1971). A pattern of consistent underreporting of income for a number of years, especially when accompanied by other circumstances showing an intent to conceal, justifies the inference of fraud as to each of the years. Holland v. United States,348 U.S. 121, 129 (1954). However, respondent must prove that petitioner committed fraud; it is not sufficient to prove that petitioner's wife committed fraud. Section 6653(b); [9]Stone v. Commissioner, supra at 227. This rule is clearly explained in the regulations which state "No person filing a joint return shall be held liable for a fraud penalty except for his own personal fraudulent conduct." Section 301.6653-1(f), Proced. & Admin. Regs. A good case could be made to prove fraud by Barbara Turner. However, she is not before the Court and her fraudulent conduct is not transferable to petitioner under the rule. *384 Petitioner did not commit fraud here because he was not aware of the embezzlement until his wife was arrested for it. As we have previously indicated, petitioner was not involved in the financial aspects of his marriage or business. Petitioner was an artist who allowed his wife to run his financial affairs. She kept the checkbook at her place of employment. She refused to show petitioner the balance in their checking account. He was unaware of the fact that she was depositing the embezzled money into the account. Even though petitioner could have gone to the bank to inspect his account, it is irrelevant because he did not. There is no evidence that his wife ever told him she was embezzling money from her employer, nor is there any evidence that anyone else told him about it. In short, the record is void of any evidence which would persuade us that petitioner knew of the embezzlement before his wife was arrested for it. Indeed, the sheriff's deputy who arrested Barbara Turner testified that petitioner was genuinely shocked when his wife was arrested. It is clear to us that petitioner thought all his and his wife's income was reported when he signed their joint tax returns. *385 The fact that we have held that petitioner should have known of the omitted income does not determine that petitioner actually knew of the omission. Without actual knowledge of the omission, respondent cannot show any scienter or deceit on petitioner's behalf and therefore cannot prove fraudulent intent. Respondent has failed to carry his burden of proof on the fraud issue because he has not proved by clear and convincing evidence that petitioner intended to evade a tax known to be due and owing. Decision will be entered under Rule 155.
Footnotes
1. All subsequent section references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable years in issue, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. Barbara Turner refused to allow petitioner access to the account information of the family finances such as bank reconciliation statements, cancelled checks, etc. Also, a large number of family checks were returned because of insufficient funds. Petitioner would either run the check through again or would get cash from his wife to honor the checks. However, except in one case, he did not investigate why the checks were returned nor did he attempt to remedy the situation. ↩
3. Barbara Turner embezzled $ 241,864.84 over a six year period of time as follows: ↩
Year
Amount
1976
$ 22,500.00
1977
20,389.00
1978
28,296.90
1979
42,915.93
1980
61,495.48
1981
66,267.53
4. Petitioner and his wife made restitution to Mather, Dawson & Phelps, Inc. in the amount of $ 137,573.00. ↩
5. During the years in issue, petitioner and his wife reported $ 169,810.00 in income while receiving an extra $ 241,864.84 in embezzled income. ↩
6. The record discloses that some of the embezzled funds were paid to Moon & Star, Inc. which helped keep the business afloat. Also, the business was purchased with borrowed money, the repayment of which was made possible, at least to some extent, because of the funds embezzled by Barbara. ↩
7. The current language of section 6013(e)(1) was not in effect during the tax years at issue here. However, this 1984 amendment applies retroactively so it covers the years in issue. See section 424(c), Pub. L. 98-369, 98 Stat. 801-802 (1984). ↩
8. Section 1.6013-5(b), Income Tax Regs., was promulgated prior to the effective date of section 424(a) of the Tax Reform Act of 1984, Pub. L. 98-369, 98 Stat. 801, which removed the specific reference to a significant benefit determination. However, this Court continues to use the significant benefit determination. See Purcell v. Commissioner,86 T.C. 228, 241 (1986), affd. 826 F.2d 470↩ (6th Cir. 1987). 9. Redesignated as section 6653(b)(4), Pub. L. 97-248, section 325(c), 96 Stat. 324, redesignated again as section 6653(b)(3), Pub. L. 99-514, section 1503(a), 100 Stat. 2742. ↩