GEORGE RICHARD GRUBICH AND ANNETTE M. GRUBICH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Grubich v. Commissioner
Docket No. 6691-86
United States Tax Court
T.C. Memo 1993-194; 1993 Tax Ct. Memo LEXIS 200; 65 T.C.M. (CCH) 2553; May 4, 1993, Filed *200 Decision will be entered under Rule 155. George Richard Grubich and Annette M. Grubich, pro sese. For respondent: David E. Whitcomb. BEGHE
BEGHE
MEMORANDUM FINDINGS OF FACT AND OPINION BEGHE, Judge: Respondent determined deficiencies in petitioners' Federal income tax and additions to tax as follows: Addition to Tax
Year
Deficiency
Sec. 6653(b) [1]
1975
$ 121,734
$  65,307
1976
191,408
103,145
1977
313,167
156,584
Respondent also determined that petitioners were liable for the increased rate of interest provided in section 6621(d) (currently sec. 6621(c)) for the year 1977, but conceded this issue completely with respect petitioner Annette M. Grubich, and partially with respect to petitioner George Richard Grubich. All section references are to the Internal Revenue Code in effect for the years *201 in question. All Rule references are to the Tax Court Rules of Practice and Procedure. Petitioners were residents of Houston, Texas, when they filed their petition. All references to petitioner are to Annette M. Grubich. Mr. Grubich and respondent have settled all issues with respect to his liabilities for the years in issue. Petitioner and respondent have also stipulated the amounts of the deficiencies but petitioner, who filed joint income tax returns with Mr. Grubich for the years in issue, contends that she should be relieved of joint and several liability for the deficiencies on the ground that she is an "innocent spouse" under section 6013(e). After concessions, the remaining issue for decision is whether petitioner qualifies for relief under section 6013(e). For the reasons that follow, we hold that she does not so qualify. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners were married in 1961 and remained married during the taxable years 1975, 1976, and 1977. In 1961 petitioner was 19 years old and had a high school education. Petitioners lived in Florida until 1973 when they moved to Dallas, Texas, and started a business *202 known as The Original Christmas Store. Petitioners started the business with their joint assets, including $ 150,000 in joint savings, plus the proceeds of sale of Mr. Grubich's foreign auto parts importing business and their house in Florida. The Original Christmas Store stocked and sold a wide variety of Christmas decorations, gift items, trees, garlands, lights, ribbons, and other seasonal merchandise imported from all over the world. The store was open 7 days a week during the 3-month period from October 1 until Christmas. The store was also open for sales in January and July, but was otherwise closed during the off-season. Petitioners worked long hours year round to make The Original Christmas Store a success. In the first year of operation, the store was a great success and earned a "phenomenal amount" of money. In 1974, petitioners opened a second Original Christmas Store in Houston, Texas. Petitioners moved to Houston in 1975. Mr. Grubich exclusively handled the financial and administrative sides of the business, and petitioner handled the artistic and decorative side. Petitioner traveled to New York and Europe to buy the store's decorations and inventory and worked *203 full time from January through September, designing displays and supervising the creation of a "fantasyland" in the stores. Petitioner's unique decorative displays were nationally recognized. She was considered to be one of the most innovative marketers in the country, bringing theater to merchandising. Petitioner knew that The Original Christmas Stores generated large revenues. She saw Mr. Grubich bring home large amounts of cash from the stores and, on occasion, helped him count the cash. However, Mr. Grubich did not tell petitioner how much money the stores were making, and he did not include her in discussions or decisions on their financial and tax affairs. Mr. Grubich maintained 13 bank accounts in Dallas and Houston into which he deposited the receipts of The Original Christmas Store. Petitioner was not aware of all these accounts and did not have authority to draw on any of them. She had her own checking account in which she deposited amounts paid over to her by Mr. Grubich. In December 1977, during the peak period of cash flow of The Original Christmas Store, petitioners purchased free and clear a vacant residential lot on Radney Circle in Houston for $ 125,000. *204 They paid for the lot with a $ 125,000 cashier's check payable to the seller. The lot appreciated in value and petitioners later borrowed $ 225,000 against it, using the loan proceeds to operate the business. Petitioners operated The Original Christmas Store as a "sole proprietorship", reporting its income and deductions on Schedule C of their joint Federal income tax returns. For the 3 years in issue, the Schedule C listed petitioner as a proprietor with her former husband. However, the first page of Form 1040 for each of the three years in issue described her occupation as "Housewife". For each of the years 1975-77, their return included one Schedule SE reporting the self-employment tax liability of Mr. Grubich. Petitioners did not attach a separate Schedule SE to report petitioner's self-employment tax liability. For the 3 years at issue petitioners reported Mr. Grubich's self-employment tax as follows, representing the maximum amount of self-employment tax owed by an individual for the respective taxable years: Year
Self-employment Tax
1975
$ 1,114
1976
1,209
1977
1,303
In determining the deficiencies for the years in issue, respondent did not determine any *205 deficiencies in petitioner's self-employment tax. Petitioners' joint income tax returns for the years 1975-77 reported gross receipts and profits from The Original Christmas Store and petitioners' taxable income as follows: Year
Gross Receipts
Gross Profits
Taxable Income
1975
$   491,117
$   36,307
$   32,506
1976
923,708
53,255
47,455
1977
1,603,174
144,846
122,826
These amounts substantially understated the actual gross receipts and profits of The Original Christmas Store and petitioners' taxable income for the years 1975-77. The parties have stipulated that The Original Christmas Store's actual gross receipts. and profits and petitioners' taxable income as follows: Year
Gross Receipts
Gross Profits [1]
Taxable Income
1975
$   679,735
$   355,161.54
$ 227,405
1976
1,194,573
624,164.39
339,634
1977
2,011,675
1,051,100.19
652,968
*206 The IRS located and determined the amount of the omitted income by the bank deposits method. According to petitioner, this took IRS agents over 100 "manhours" to complete. Petitioners did not timely file their joint income tax returns for the years 1975 and 1976. Both these returns were filed on January 6, 1978. Petitioners filed their 1977 return in June 1978. There is no evidence that petitioners obtained an extension of time to file any of these returns. When petitioner signed the joint income tax returns for the years in issue, she did not read or understand the returns, and signed them as directed by Mr. Grubich. The returns were prepared with the help of a tax return preparer who was given summary information by Mr. Grubich as to the income and expenses of the business. The return preparer only signed the 1977 return as preparer; he did not sign the 1975 and 1976 returns. The returns were grossly erroneous in that they substantially understated gross receipts and gross profits of The Original Christmas Store. During the years 1975-77, petitioners' main source of income was The Original Christmas Store. Petitioners lived comfortably on their income from the business. *207 However, for petitioner, their marriage was not a happy one. From 1975 through 1983, petitioner suffered continuous emotional and physical abuse from Mr. Grubich, including the belittling and downgrading of her contributions to the success of The Original Christmas Store. Petitioners separated in 1981 and divorced in 1983. At that time of the divorce, the principal assets of the community consisted of $ 897,257.06 in cash; $ 1,028,049.25 in notes receivable; the homestead worth $ 250,000; the Radney Circle property worth $ 500,000 less the $ 225,000 outstanding indebtedness which Mr. Grubich agreed to pay off; homestead furnishings and collectibles valued at $ 280,000; The Original Christmas Store (which had grown to 11 stores by 1983), valued at $ 2 million less $ 150,000 in tax liabilities; one 1962 Rolls Royce valued at $ 15,000, and a 1980 Volkswagen Scirocco valued at $ 7,000. Mr. Grubich also owned a 1979 Ferrari and had a 1976 Rolls Royce titled in the name of The Original Christmas Store. The divorce decree awarded petitioner the $ 5,000 in her personal checking account, $ 801,834.06 in cash, $ 113,107.60 of the notes receivable, $ 35,423 in cash from other personal *208 bank accounts, both parcels of real property, and all the furnishings and collectibles in the homestead, all jewelry, and petitioner's personal items. Petitioner also received the 1976 Rolls Royce and the 1980 Volkswagen Scirocco. The divorce decree ordered Mr. Grubich to pay petitioner 10 annual payments of $ 25,000 each "for the purposes of equalizing the value of the community property * * * from The Original Christmas Store Account." The divorce decree also provided that Mr. Grubich would be responsible for "All past tax liability and current tax liability to the Internal Revenue Service through December 31, 1981." After the divorce, petitioner continued to create the innovative displays that had made The Original Christmas Store such a success. Pursuant to an employment contract and covenant not to compete with The Original Christmas Store, Mr. Grubich paid petitioner $ 1,000 per week plus one-half of 1 percent of the stores' gross sales after deducting sales and excise taxes, to continue working at The Original Christmas Store. Petitioner stopped working for Mr. Grubich around 1987. On December 19, 1983, Mr. Grubich was indicted for income tax evasion under section 7201 *209 for the years 1975, 1976, and 1977. On January 16, 1984, Mr. Grubich pled guilty to one count for 1975 and was convicted. The remaining two counts for 1976 and 1977 were dismissed. Mr. Grubich was given a suspended sentence of 3 years' imprisonment, placed on 3 years' unsupervised probation, ordered to perform 300 hours of community service, and fined $ 10,000. After the divorce, Mr. Grubich expanded The Original Christmas Store to 16 stores. Some time thereafter, the business began to lose money and on December 6, 1988, 33 months after filing a petition in this Court, Mr. Grubich, individually and doing business as The Original Christmas Store, filed for bankruptcy protection under chapter 11 of the Bankruptcy Code, and the tax proceeding in this Court was stayed. On October 16, 1990, the U.S. Bankruptcy Court for the Southern District of Texas converted the proceeding to a chapter 7 bankruptcy proceeding. On February 19, 1991, Mr. Grubich received a discharge in bankruptcy releasing him from all dischargeable debts, and on April 5, 1991, the proceedings in this case were reinstated. After petitioner's divorce from Mr. Grubich, petitioner remarried. Her second husband, who *210 now lives in the Cayman Islands, stole a substantial amount of her property, including her Porsche. He also forged petitioner's signature on checks and filed false insurance claims under her name. OPINION A. Elements of Section 6013(e)
Husband and wife are jointly and severally liable for the total tax due on their joint Federal income tax return. Sec. 6013(d). This means that either spouse may be required to pay all the tax shown due on the return and any deficiency that may be determined plus interest and penalties. In some situations, one spouse may qualify as a so-called "innocent spouse" and be relieved of joint and several liability. Sec. 6013(e). The spouse seeking relief under section 6013(e) has the burden of proof. Rule 142(a); Bokum v. Commissioner, 94 T.C. 126, 138 (1990). The purpose of section 6013(e), as originally enacted in 1971, Act of Jan. 12, 1971, Pub. L. 91-679, 84 Stat. 2063, was to remedy some of the inequities that resulted when one spouse was saddled with the other spouse's tax bill simply because they had filed a joint return. Sanders v. United States, 509 F.2d 162, 166 (5th Cir. 1975); *211 Sonnenborn v. Commissioner, 57 T.C. 373, 381 (1971). A typical situation to which section 6013(e) was meant to apply is where one spouse embezzles, without the knowledge of the other spouse, omits the proceeds from gross income, squanders the embezzled funds with third parties, and deserts the innocent spouse. S. Rept. 91-1537 (1970), 1971-1 C.B. 608. Section 6013(e) should be construed so as to provide some scope in which its purpose of remedying perceived injustice will be able to operate. Sanders v. United States, supra at 166-167. However, the spouse seeking relief under section 6013(e) cannot prevail merely by establishing that he or she is "innocent" in some conventional sense. The term "innocent spouse" is a misleading misnomer; it does not appear in the statute and, as will later appear, it unfortunately seems to have clouded petitioner's understanding of section 6013(e) and the elements of her case. Section 6013(e) provides that the spouse seeking relief from joint and several liability must prove, for each taxable year at issue, that: (A) The married couple filed a joint income *212 tax return; (B) there was a substantial understatement of tax attributable to grossly erroneous items of the other spouse; (C) in signing the return, he or she did not know, and had no reason to know, that there was such an understatement; and (D) taking into account all the facts and circumstances, it is inequitable to hold him or her liable for the deficiency in tax attributable to such substantial understatement for the taxable year in question. If the spouse seeking section 6013(e) relief satisfies all four of these requirements, that spouse "shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such substantial understatement." Sec. 6013(e)(1). [1] Despite the statute's remedial purpose, a failure to satisfy any one of the four requirements will prevent the putative innocent spouse from qualifying for relief under section 6013(e). Purcell v. Commissioner, 826 F.2d 470, 473 (6th Cir. 1987), affg. 86 T.C. 228 (1986). *213 B. Respondent's Position
Respondent concedes that petitioners filed joint returns for the years in issue and that the deficiencies in tax are due to substantial understatements in tax attributable to grossly erroneous items. However, respondent contends that petitioner has failed to prove that no part of such grossly erroneous items (i.e., the items of gross income omitted from the gross receipts of The Original Christmas Store) was attributable to her. Respondent also contends that, in signing the returns for the years in issue, petitioner knew, or had reason to know, that the returns in question contained substantial understatements of tax attributable to grossly erroneous items. Respondent argues further that petitioner has not shown that it would be inequitable to hold her jointly and severally liable with her former husband for the deficiencies in Federal income tax for the years in question. C. Application of Section 6013(e) to the Facts
1. Section 6013(e)(1)(B): Attribution
One of the elements of section 6013(e), under paragraph (1)(B), is that the substantial understatement of tax, with respect to which the putative innocent spouse can be relieved *214 of liability, must be attributable to grossly erroneous items of the culpable spouse. The term "substantial understatement" means any understatement of tax that exceeds $ 500. Sec. 6013(e)(3). "Grossly erroneous items" are defined, in part, to mean "any item of gross income attributable to * * * [the culpable] spouse which is omitted from gross income". Sec. 6013(e)(2)(A). For purposes of section 6013(e), the determination of the spouse to whom items of gross income (other than gross income from property) are attributable is made without regard to community property laws. Sec. 6013(e)(5); sec. 1.6013-5, Income Tax Regs.Section 6013(e)(1)(B) has not received much authoritative gloss. However, it appears that earned income is "attributable" to the spouse who performed the services, without regard to the otherwise legal attribution, under State community property law, of one-half of such income to each spouse. In short, section 6013(e)(1)(B) provides that a taxpayer cannot be relieved of an income tax liability with respect to her own income. McReynolds v. Commissioner, T.C. Memo. 1991-210. Thus, petitioner cannot be relieved of joint and several *215 liability if and to the extent she cannot prove that the substantial understatements of tax are attributable to income earned by Mr. Grubich and not herself. See Elleven v. Commissioner, T.C. Memo. 1993-145. Although petitioner may not have understood how Mr. Grubich handled the financial and tax affairs of The Original Christmas Store, and even though it was Mr. Grubich who fraudulently omitted the items of gross income from the gross receipts reported on Schedule C of their returns, there is overwhelming evidence that the gross income itself (rather than its omission) was attributable to the joint efforts and activities of Mr. and Mrs. Grubich. In Allen v. Commissioner, 514 F.2d 908, 913 (5th Cir. 1975), affg. in part, revg. in part on other grounds and remanding 61 T.C. 125 (1973), the U.S. Court of Appeals for the Fifth Circuit stated that: where omitted income is generated by the performance of substantial services by one spouse, that income should be attributed to that spouse for purposes of section 6013(e)(1).
Petitioner, along with her former husband, actively and substantially *216 participated in the business activity that generated the omitted income. Therefore, the substantial understatements were attributable to grossly erroneous items of both Mr. Grubich and petitioner. Although the joint returns for the years 1975-77 contain internal inconsistencies with respect to petitioner's participation in The Original Christmas Store, which respondent did not resolve in the statutory notice of deficiency, [2] *218 it is clear that petitioner played an important (and perhaps predominant) part in its overall success. Petitioner did not try to show the relative values of the services performed by petitioner and Mr. Grubich during the years in issue. There is nothing in the record that would enable us to make an allocation of the relative value of petitioners' respective services.[3] See Elleven v. Commissioner, supra.Inasmuch as petitioner has not shown what part of the omitted income was attributable to Mr. Grubich, she has failed to satisfy the requirements of section 6013(e)(1)(B). See Quinn v. Commissioner, 62 T.C. 223, 229-231 (1974), affd. 524 F.2d 617 (7th Cir. 1975); *217 Feldman v. Commissioner, T.C. Memo. 1993-17; Estate of Durkin v. Commissioner, T.C. Memo. 1992-325; Hayman v. Commissioner, T.C. Memo. 1992-228. *219 By failing to establish what part of the omitted income was attributable to Mr. Grubich, petitioner has failed to establish that she is entitled to relief from joint and several liability under section 6013(e), and we need not further address the remaining statutory elements of knowledge and inequity. Nevertheless, in the interest of completeness, and because these two remaining elements were the focus of petitioner's argument, we will discuss them. As this discussion bears out, petitioner also fails to satisfy the requirements of section 6013(e)(1)(C) and (D). 2. Section 6013(e)(1)(C): Knowledge
Section 6013(e)(1)(C) provides that the putative innocent spouse must establish that, in signing the return, he or she did not know, and had no reason to know, that the return contained a substantial understatement of tax attributable to a grossly erroneous item of the culpable spouse. Petitioner will be held to have known or to have had reason to have known that there were substantial understatements in tax on petitioners' joint income tax returns for the years 1975-77 if a reasonable woman in her position, with her level of intelligence, would have thought there were such substantial *220 understatements. Sanders v. United States, 509 F.2d at 167-168. In applying the "reason to know" standard, the courts may look to factors such as the following: (1) unusual or lavish expenditures; (2) participation in business affairs or bookkeeping; (3) the culpable spouse's refusal to be forthright about the couple's income; (4) claimant spouse's emotional condition during the period in question; (5) the complexity of the financial transactions that produced the funds; and (6) the complexity of the method the IRS used to locate and determine the omissions. Price v. Commissioner, 887 F.2d 959, 963 (9th Cir. 1989), revg. an Oral Opinion of this Court; Stevens v. Commissioner, 872 F.2d 1499, 1505 (11th Cir. 1989), affg. T.C. Memo. 1988-63; Sanders v. United States, supra. The putative innocent spouse's role as homemaker and complete deference to the other spouse's judgment about financial and tax matters, standing alone, are insufficient to establish that the putative innocent spouse had no reason to know. Stevens v. Commissioner, supra at 1505-1506; *221 Shea v. Commissioner, 780 F.2d 561, 566 (6th Cir. 1986), affg. in part and revg. in part T.C. Memo. 1984-310. In addition, there is a duty of inquiry on the part of the putative innocent spouse; he or she cannot simply turn a blind eye to what is going on. Price v. Commissioner, supra at 965-966; Stevens v. Commissioner, supra at 1505. Petitioner testified that Mr. Grubich was not forthright about their income and refused to discuss financial and tax matters with her. We believe this to be the case. Petitioner also submitted affidavits concerning her emotional condition during the period in question. The Court has found that, from 1975 through 1983, petitioner suffered continuous emotional and physical abuse from her former husband. While the financial transactions that produced the omitted income, i.e., retail sales by The Original Christmas Store, were not in themselves complex, it appears that the IRS needed to use a complex method to locate and determine the amount of the omitted income. According to petitioner, the IRS spent over 100 "manhours" *222 in completing this task. Nevertheless, we believe that these facts are outweighed by others that indicate petitioner had "reason to know" within the meaning of section 6013(e)(1)(C). Despite petitioner's repeated assertions that she was "innocent", she fails to satisfy the requirement of section 6013(e)(1)(C) because of the extent to which she participated in the operations of The Original Christmas Store. This case is not a case in which the culpable spouse operated a secret business or embezzled funds from a third party. See Zinser v. Commissioner, T.C. Memo. 1978-256; Anderson v. Commissioner, T.C. Memo. 1975-104. Nor is this a case in which the culpable spouse operated a business of which the "innocent spouse" was aware but was unfamiliar with its operations and financial condition. See Porter v. Commissioner, T.C. Memo. 1991-561; Grosso v. Commissioner, T.C. Memo. 1980-186, affd. without published opinion 676 F.2d 685 (3d Cir. 1982). Petitioner not only knew about the existence of The Original Christmas Store but was the *223 person solely responsible for decorating the Dallas and Houston stores from January through September of each year. Petitioner also knew that the business brought in large revenues and, on occasion, counted the stores' cash receipts, which were sometimes kept at home overnight. Petitioner also knew that she and Mr. Grubich were living well on their income during the taxable years in question. Moreover, petitioner failed to make any inquiry into their income tax reporting and took a decided disinterest in financial and tax affairs. When the April 15 tax return filing deadlines came around for the taxable years 1975 and 1976, petitioner did not ask Mr. Grubich why they had not filed income tax returns, she never read the returns that were eventually filed, and she never inquired how Mr. Grubich arrived at the numbers reported on the returns. Although petitioner may not have realized that the returns she and Mr. Grubich filed grossly understated The Original Christmas Store's income, it is difficult to believe that petitioner could have been oblivious to the fact that they made 10 times the income reported on those returns. These facts outweigh the facts that Mr. Grubich was not *224 forthright and was abusive. They also outweigh the fact that the IRS used a relatively complex method in locating and determining the amount of the omitted income. Estate of Jackson v. Commissioner, 72 T.C. 356 (1979); Hodges v. Commissioner, T.C. Memo. 1986-67. 3. Section 6013(e)(1)(D): Equities
As we stated above, section 6013(e) was enacted to remedy certain inequities in holding an "innocent spouse" liable for the other spouse's tax liability. Sanders v. United States, 509 F.2d 162, 166-167 (5th Cir. 1975); Sonnenborn v. Commissioner, 57 T.C. 373, 381 (1971). Although petitioner has failed to satisfy two of the elements of section 6013(e) and cannot be relieved of joint and several liability, we address briefly whether it would be inequitable to hold petitioner liable for the deficiencies. Sec. 6013(e)(1)(D). When deciding whether it would be inequitable to hold a spouse liable for a deficiency, courts consider whether the putative innocent spouse significantly benefited, directly or indirectly, from the items omitted from gross income. Belk v. Commissioner, 93 T.C. 434, 440 (1989). *225 Normal support is not considered a significant benefit for purposes of determining whether it is inequitable to hold petitioner jointly and severally liable for the deficiencies in question. Terzian v. Commissioner, 72 T.C. 1164, 1172 (1979); sec. 1.6013-5(b), Income Tax Regs. We are mindful that normal support is a floating standard, inasmuch as "one person's luxury can be another's necessity". Sanders v. United States, supra at 168. However, the record reveals that petitioner received more than normal support from the earnings of The Original Christmas Store. Petitioner lived well as a result of the lucrative family business. Moreover, petitioner received a substantial settlement upon her divorce from Mr. Grubich, which included almost $ 1 million in cash and notes receivable, two automobiles, including a Rolls Royce, the homestead, and the Radney Circle property purchased free and clear with the untaxed profits of the business.[4] While petitioner may not have thought these benefits unusual, the record supports the conclusion that she significantly benefited from the substantial understatements of tax, and *226 she has not shown otherwise. Therefore, it would not be inequitable, within the meaning of section 6013(e)(1)(D), to hold her jointly and severally liable with Mr. Grubich for the tax liabilities at issue. Purcell v. Commissioner, 826 F.2d 470 (6th Cir. 1987), affg. 86 T.C. 228 (1986); Pappadio v. Commissioner, T.C. Memo. 1992-568; Kahrahb Restaurant, Inc. v. Commissioner, T.C. Memo. 1992-263. Just as petitioner cannot satisfy the attribution *227 and knowledge prongs of section 6013(e)(1)(B) and (C) by being "innocent" in some conventional sense of that word, she cannot and does not satisfy the equity prong of section 6013(e)(1)(D). This is so even though she would suffer another kind of inequity if Mr. Grubich should not fulfill his duty under the divorce decree to pay all obligations to the Internal Revenue Service for the years in question, and escapes liability therefor by reason of his discharge in bankruptcy. Cf. In re Sanderfoot, 899 F.2d 598, 606-608 (7th Cir. 1990) (Posner, J., dissenting). That inequity, however, would not be a state of affairs for which this Court could provide a remedy. Petitioner does not qualify for relief under section 6013(e) and is jointly and severally liable for the deficiencies determined by respondent for the years in issue. As explained in the statutory notice of deficiency, petitioner is not liable for the addition to tax for fraud under section 6653(b). Respondent has conceded that petitioner is not liable for the increased rate of interest under section 6621(d) (currently section 6621(c)) for the year 1977. To reflect the foregoing, Decision *228 will be entered under Rule 155. Footnotes
1. Respondent determined that only petitioner George Richard Grubich is liable for the additions for fraud under sec. 6653(b). Petitioner Annette M. Grubich is not liable for these additions to tax.↩
1. Respondent disallowed certain deductions claimed on petitioners' returns, but those deductions are no longer in issue because of the stipulations.↩
1. In 1984, Congress retroactively amended sec. 6013(e) to apply to all open years to which the Internal Revenue Code of 1954 applies. Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 424(a), 98 Stat. 494, 801; Bokum v. Commissioner, 94 T.C. 126, 138↩ n.13 (1990). Therefore, we apply the statute as amended in 1984, even though the years before us are 1975-77.
2. The Schedules C attached to petitioners' income tax returns for 1975-77 state that the proprietors are "George R. and Annette M. Grubich". However, the returns also state petitioner's occupation as "Housewife". In addition, the returns contain only one Schedule SE reporting the self-employment tax liability of Mr. Grubich, but none for petitioner. Respondent did not recharacterize The Original Christmas Store as a partnership, which it appears to have been, and did not determine that petitioner was liable for self-employment tax on her distributive share of the business' income. By so doing, respondent either implicitly accepted petitioners' characterization that Mr. Grubich was the store's sole proprietor and that petitioner was a "Housewife" or simply overlooked petitioner's self-employment tax liability in computing the amount of the deficiencies. See Zampa v. Commissioner, T.C. Memo. 1990-561↩.
3. If we thought it would have made a difference, we would have been inclined to use an approach analogous to that in Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930), to determine some minimum portion of the gross receipts attributable to Mr. Grubich's services in operating The Original Christmas Store. Cf. Franklin v. Commissioner, T.C. Memo. 1993-184 (applying the Cohan rule to estimate the taxpayer's unreported receipts for purposes of sec. 6653(b)(2)). As a preliminary step, it would have been necessary, inasmuch as petitioners were engaged in a business in which personal services and capital were material income-producing factors, to determine the portion attributable to capital. Cf. sec. 911(d)(2)(B). Inasmuch as the community property laws can be used to determine the income from property, sec. 6013(e)(5), one-half of that portion of such income would have been attributable to Mr. Grubich. Again, however, there is no basis in the record for such an allocation, cf. Vanicek v. Commissioner. 85 T.C. 731, 743 (1985), or for an allocation of the service income between Mr. Grubich and petitioner, and, as discussed in the text below, petitioner does not satisfy the remaining elements of sec. 6013(e)↩.
4. It is well settled that if a spouse benefits from unreported income in a year subsequent to the ones in issue, e.g., as a result of a property settlement or inheritance from the culpable spouse, that benefit may be sufficient to deny innocent spouse protection. Terzian v. Commissioner, 72 T.C. 1164, 1172 (1979); Pappadio v. Commissioner, T.C. Memo. 1992-568; sec. 1.6103-5(b), Income Tax Regs.↩